Beadles v. Alexander.

W. E. BEADLES AND WIFE *v.* J. C. & S. M. ALEXANDER.

1. WILL. *Evidence.* It is admissible to prove the statement of the testator that he signed the will in the presence of the subscribing witnesses.

2. SAME. *Evidence.* *Act of* 1869–70 *construed.* Under the act of 1869–70, T. & S. Code, sec. 3813, *a, b, c, d,* the devisees and legatees under the will are competent witnesses to prove the declarations of the testator.

3. SAME. *Evidence.* *Presumption.* When the fact that the signature of the subscribing witnesses are genuine is established, and nothing else appears, the presumption that the attestation was in the presence of the testator is conclusive. But if there be positive testimony on the subject by the subscribing witnesses or otherwise, it then becomes a question for the jury to settle upon all the evidence.

FROM WILSON.

Appeal from the Circuit Court. W. H. WILLIAMSON, Judge.

JORDAN & JAS. F. STOKES for plaintiff.

TARVER & GOLLADAY and B. T. TANNER for defendant.

McFARLAND, J., delivered the opinion of the court.

This issue *devisavit vel non,* was made up to test the will of John Alexander. It contains a devise of lands, and the question was, whether it was duly executed in the presence of two subscribing witnesses, as required by the statute. The paper was produced and the names of A. A. Massey and John W. Jacobs appear as subscribing witnesses. It was proven that

Beadles v. Alexander.

Massey was dead and that his signature was genuine. Jacobs was introduced as a witness, and he testified that his signature was genuine, but he gives it as his best recollection that the testator was not present when he signed the will as witness. He says the will was brought to a certain beech log school-house where he was teaching school, by James Simms, and at the request of Simms, he (Jacobs) and Massey, signed it as witnesses, but according to his recollection the testator was not present.

The proponents thereupon undertook to establish by other testimony, that the testator was in fact present at the time. Here was proof to show that Simms, who had since died, had testified on a former trial that he wrote the will but was not present when it was executed. Several witnesses proved statements of the testator to the effect that Simms had written the will and that he himself had taken it to the beech log school-house and there executed it in the presence of Massey and Jacobs, who witnessed it at his request. These statements of the testator were objected to, and the question is, were they properly admitted? After careful consideration we are of opinion they were. It is true it is laid down in Redfield on Wills, as the result of the authorities, that statements of the testator, not parts of the *res gestæ* and not showing the state of the testator's mind, but statements introduced merely to establish a particular fact by the force of the admission, are hearsay testimony and not admissible.

But a *prima facie* case arises upon proof of the

handwriting of the subscribing witnesses, and it is conceded that when the subscribing witnesses fails to prove the due execution of the will by the testator, that they may be contradicted or impeached and the fact established by other testimony. The statements of the testator to this direct point do but most strongly establish the fact. They do not stand as mere hearsay declarations of other parties. They are the declarations of the testator as to his own acts, and about which he must certainly know, and in general he has no motive to speak falsely, and both parties claim under him, one as devisee or legatee, the other as distributee and heir. His declarations are not introduced to establish the particular fact, by force of the admission or statements alone, but for the purpose of corroborating and supporting the presumption arising from the fact that the will bears the genuine signatures of two competent subscribing witnesses, and to contradict the testimony of the witness who, although he admits his signature, yet denies the testator's presence. It was held in North Carolina in three cases, that the statements of the testator are admissible generally, not merely as parts of the *res gestæ* or as showing the state of the testator's mind, but because they are the declaration of the only party having a vested interest to declare the whole truth, where all made the will and all could destroy it, and in either case the rights of no one else was affected. See *Reel* v. *Reel*, 1 Hawk., 248; *Howell* v. *Barden*, 3 Dev. & Bat., 442, and *Hester* v. *Hester*, 4 Dev. & Bat., 248.

We hold that the circuit judge did not err on this question.

The next question is, whether the devisees and legatees under the will were competent witnesses to prove declarations of the testator. It is not insisted that our recent legislation makes them competent *subscribing witnesses*. The law as to subscribing witnesses remains as before, but the question is, may they be examined as other witnesses. This depends upon the construction of the act of 1869–70, T. & S. Statutes, sec. 3813, *a, b, c, d*. The first section enacts that in all civil courts no person shall be incompetent to testify because he or she is a party or interested in the issue to be tried. The exception is in the next section, as follows: "In actions or proceedings by or against executors, administrators or guardians, in which judgments may be rendered for or against them, neither party shall be allowed to testify against the other as to the transaction with or statement by the testator's intestate or ward, unless called to testify by the opposite party, or required to testify thereto by the court."

We hold that this case does not come within the exception; that it is not an action by the executor, in which judgment could be rendered for or against him in the sense of the above statute, but is a contest between the devisees and legatees on the one side, and the heirs and distributees on the other, and that the witnesses were competent, and the court, therefore, did not err in admitting them.

The spirit and meaning of the above statute is,

that in a suit between the estate of a deceased person and a living party, that the latter shall not be allowed to give his version of the transactions with or conversations of the deceased, whose lips are closed. This in principle does not apply to the present case, where both the devisees and heirs 'are living and compelled to testify for themselves.

In his Honor's charge to the jury there are certain passages excepted to, as follows: If this witness, Jacobs, says that he signed the paper as a witness, then the law presumes that he did so at the request of the testator in his presence; if he says he signed the paper not in the presence of the testator and at his request, this will weaken the presumption as to him; and if he says that he and Massey both signed, but not in the presence of the testator and at his. request, that will weaken the presumption that arises from the proof of Massey's handwriting as well as his own, and then presumption will be affected and weakened in proportion to the value and weight of the testimony of Jacobs. If Jacobs admits his handwriting but denies that he attested the paper in the presence of the testator and at his request, this conflict between his testimony before you and the presumption from proof or admission of his handwriting will affect his credibility as a witness, and diminish the value of his testimony.

The court then proceeds to instruct the jury, that the plaintiff, as to Jacobs, is not bound by the rule that a party cannot impeach his own witness.

We think the above extract of the charge is too

Beadles v. Alexander.

strong in this, that it conveys the idea that the presumption of law that the testator was present when the will was inspected, which arose upon the admission of Jacobs that his signature was genuine, was still controlling, notwithstanding Jacobs' testimony upon the subject; that Jacobs' testimony only weakened the presumption, and as he testified to a fact, contrary to the presumption of law, that his credibility was thereby affected.

It is only in the absence of positive testimony on the subject that the presumption of law is controlling. When the fact that the signatures of the subscribing witnesses are genuine is established and nothing else appears, the presumption that the attestation was made in the presence of the testator is conclusive; but if there be positive testimony on the subject by the subscribing witness or otherwise, it then becomes a question for the jury to settle upon the evidence. And while the jury may take into consideration the improbability that a witness would attest the will in the absence of the testator, we are not prepared to say that the fact that witness proves that he did sign his name in the absence of the testator, goes to impeach his credit and to show that he was unworthy of belief. The credit due the witness should be left to the jury to determine, as in all other cases.

For this error the judgment should be reversed and a new trial awarded.