GLEN WHITLOW and GRETCHEN BARNES, Co-Executors, Appellees, v. JAMES Q. WEAVER, Appellant. —478 S.W.2d 57.

Western Section.* February 4, 1970.

652

W. J. Reynolds, Selmer, for appellant.

Glenn Whitlow, Selmer, Frank C. Ingraham, Nashville, for appellees.

CARNEY, P.J. Guy H. Weaver, a citizen and resident of McNairy County, Tennessee, died February 15, 1967. On March 23, 1967, his last will and testament was admitted to probate in common form in the County Court of McNairy County. Mr. Weaver left surviving him only a son, the contestant, James Quentin Weaver, age 38, a citizen and resident of the State of Mississippi.

Mr. Guy Weaver had been divorced from the mother of J. Quentin Weaver about 35 years prior to his death. The son, James Quentin Weaver, never lived in the home of Mr. Guy Weaver after he was two years of age. He was, however, on friendly terms with his father and they saw each other from time to time. Mr. Guy Weaver never remarried.

Under the terms of a will dated January 17, 1966, signed by Guy H. Weaver and witnessed by Ernest Ray Barton and Bobby E. Barton, two of his neighbors, Mr. Guy Weaver ordered his farm and other property sold and reduced to cash. After the payment of all debts, funeral expenses, inheritance taxes, etc., the remainder was placed in trust with the interest therefrom to be paid to his son, the contestant, James Quentin Weaver, until such time as the son, James Quintin Weaver, should reach the age that he would be entitled to draw full Social Security benefits as a retired person. Upon this event

the trust was to terminate and the net estate to be paid one-half to the Free Will Baptist Children's Home of Eldridge, Alabama, and the other remaining one-half to the Tennessee Baptist Children's Home, Inc. of Memphis.

A niece, Gretchen Barnes, who at one time had lived in the home with Mr. Guy Weaver, but who, at the time of the trial, had been teaching school in Tulsa, Oklahoma, for some twelve to fourteen years was named executrix and trustee without bond of the will. Mr. Glen Whitlow, attorney of Selmer, Tennessee, who drew the will, qualified as co-executor of the will because the executrix, Gretchen Barnes, was a non-resident of the State of Tennessee.

The contestant, James Quentin Weaver, son of Guy Weaver, is the only heir and next of kin of Guy Weaver under the laws of descent and distribution of the State of Tennessee. On December 21, 1967, James Quentin Weaver filed his petition contesting the will. He insisted that it was invalidly executed because not executed in compliance with the Uniform Wills Act, Tennessee Code Section 32-104. The case was certified to the Circuit Court of McNairy County for a trial on an issue of devisavit vel non.

The signatures of the testator and of the two subscribing witnesses are admittedly genuine. The concluding sentence of the will proper followed by the attestation clause signed by the two Barton brothers is as follows:

"In Witness Whereof, I have hereunto subscribed my name on this the 17 day of January, 1968.

/s/ Guy H. Weaver

Signed by the said Guy H. Weaver, as and for his Last Will and Testament, consisting of three pages, including this page, in the presence of us, the undersigned, who, at his request, and in his sight and presence, and in the sight and presence of each other, have subscribed our names as attesting witnesses, the day and date above written.

/s/ Ernest Ray Barton

/s/ Bobby E. Barton

Subscribing Witnesses''

The two subscribing witnesses, Ernest Barton and Bobby Barton, testified that they were friends of Mr. Guy Weaver and that they lived about three miles from him; that on the occasion when they signed the will Mr. Weaver brought it to their mother's home and asked them to sign their names upon the document; that he never did disclose to them that it was a will; and that the document was so folded that the signature of Mr. Weaver, if it was on the will, was obscured by the fold in the paper; that they did not know whether he had signed the will prior to the time he brought it to their mother's home or not but that he did not sign it in their presence in their mother's home, nor did he tell them that it was a will which they were signing. They stated that they did not read the attestation clause above their signatures.

Ernest Barton stated that he figured that the document was a will; that he had a pretty good idea that that was what it was. The Barton brothers had on one occasion signed a note to Mr. Weaver for borrowed money; that they understood what they were signing on

that occasion. They had never witnessed any other papers for Mr. Weaver. The Barton brothers said they signed the will in the presence of each other and in the presence of Mr. Weaver; that after they signed the will Mr. Weaver returned it to his pocket from which he had taken it at the time he asked them to sign it.

Mr. Glen Whitlow, attorney of Selmer, Tennessee, testified that he drafted the will in accordance with the request of the testator; that he regularly told his clients the legal requirements for the execution of a will; and that he would stake his life nearly that he told Mr. Weaver how the will should be executed and witnessed. Further, Mr. Whitlow testified that after the death of Mr. Guy Weaver the will was brought to him by the contestant, Quentin Weaver, and that when the will was propounded for probate in common form, he talked to the witness, Ernest Barton, and that he asked Ernest Barton if Mr. Weaver signed the will in his presence and Ernest Barton answered that he did not; and thereupon he asked Ernest Barton if Mr. Weaver had already signed the will when he brought it to Barton brothers to be signed and Ernest replied, "Yes."

No question was made as to the legal capacity of Guy Weaver to make a valid will. The contestant contended that the proponents had not proven the due execution of the will in accordance with T.C.A. Section 32-104 and requested a directed verdict against the will. The motion was overruled, the case submitted to the jury, and the jury found in favor of the will.

The contestant, James Quentin Weaver, has appealed to this Court and assigned error.

By assignments of error I through VII the appellant, contestant, insists that the Trial Judge erred in not directing a verdict against the will and erred in submitting the case to the jury because the due execution of the will was not proven to have been made in accordance with T.C.A. Section 32-104.

We copy T.C.A. Section 32-104 as follows:

"32-104. Execution of will other than holographic or nuncupative.—The execution of a will, other than a holographic or nuncupative will, must be by the signature of the testator and of at least two (2) witnesses as follows:

(1) Testator. The testator shall signify to the attesting witnesses that the instrument is his will and either

(a) Himself sign,

(b) Acknowledge his signature already made, or

(c) At his direction and in his presence have someone else sign his name for him, and

(d) In any of the above cases the act must be done in the presence of two (2) or more attesting witnesses.

(2) Witnesses. The attesting witnesses must sign

(a) In the presence of the testator, and

(b) In the presence of each other."

The appellant insists that under the authority of Simmons v. Leonard, 91 Tenn. 183, 18 S.W. 280, and Fann v. Fann, 186 Tenn. 127, 208 S.W.2d 542, there was insufficient evidence presented in support of the will to justify either the court or a jury in finding in favor of the will. Unless we can make a valid legal distinction between the facts of Fann v. Fann and the facts of the case at bar then the assignments of error must be sustained and the verdict against the will directed.

The case at bar is analogous to Fann v. Fann in that in both cases attesting witnesses have testified directly contrary to the solemn recitations contained in the attesting clauses above their signatures. The cases are different in that when Fann v. Fann reached the Supreme Court of Tennessee there was already a concurrent finding of fact by the Trial Judge and the Court of Appeals that the attesting witnesses did not sign the will in the presence of each other as required by the statute.

In the case before this Court there has been inferentially a finding of fact by the jury approved by the Trial Judge that the testator, Guy Weaver, did sign the will in question in the presence of the two witnesses as and for his last will and testament or that he acknowledged his signature already made thereon and that the witnesses signed the will as attesting witnesses in his presence and in the presence of each other just as the atttestation clause recited.

The public policy of the State of Tennessee with reference to the establishment of wills was very succinctly stated by Justice Gailor of our Tennessee Supreme Court in Leathers v. Binkley, 196 Tenn. 80, 264 S.W.2d 561,

when he said, "To protect the right of testamentary disposition of property, we must sustain a will as legally executed if it is possible to do so, Sizer's Pritchard on Wills, Secs. 384, 386, et seq.; 57 Am.Jur., Wills, sec. 218. Compare: Ball v. Miller, 31 Tenn.App. 271, 214 S.W.2d 446."

Justice Tomlinson, in the second paragraph of his opinion in Fann v. Fann, recognized that there were many evils which could result from attesting witnesses denying the solemn recitation contained in the attestation clause above their genuine signatures. He stated that the Supreme Court had granted certiorari in Fann v. Fann in the hope that the Supreme Court might find some way to sustain the will.

In Fann v. Fann the concurrent findings of fact by the Trial Court and by the Court of Appeals that the attesting witnesses did not sign in the presence of each other were binding on the Supreme Court. T.C.A. Section 27-113. Provident Washington Ins. Co. v. Reese, 213 Tenn. 355, 373 S.W.2d 613. The only way the Supreme Court could have decided Fann v. Fann differently was to have held as a matter of law that the presumption of legality arising from the recitations in the attestation clause and the proof of genuineness of the signatures of the testator and two subscribing witnesses was conclusive and non-rebuttable. Such a ruling could also give rise to fraud and would not be in the public interest.

Attesting witnesses should not have the absolute power of life and death over a will in those cases where the will was signed only in the presence of two witnesses. Wills are seldom executed and/or witnessed in public.

On most occasions only the testator and his two attesting witnesses are present as was the case below. Only the testator, Mr. Weaver, and his two neighbors, Ernest Ray Barton and Bobby E. Barton, were present when the Barton brothers signed the attestation clause to Mr. Weaver's will.

While the decisions in the various jurisdictions are by no means uniform, the general rule is that the proponents of a will establish a prima facie case as to its due execution when the genuineness of the signatures of the testator and subscribing witnesses along with an attestation clause containing recitations of due execution is shown. Such a prima facie case in favor of the due execution of a will is not abandoned by presenting testimony of living witnesses which is otherwise. 57 Am.Jur., Wills, Section 902, page 594.

See also annotation in 40 A.L.R.2d 1225 which we copy as follows:

"A majority of the courts, it appears, have viewed the presumption of due execution which arises from proof of attestation of a will to be a presumption 'of fact,' which remains operative and may be accorded evidentiary weight notwithstanding the introduction of contrary evidence, rather than as a presumption 'of law' which disappears when opposed by other evidence.

This conflict in authority seems to be largely a matter of academic interest, since the courts, in ruling upon the operative effect of the presumption have, regardless of the particular legal label which they have

placed upon it, reached the same conclusions. Thus it is held that by virtue of the presumption the burden of going forward with the evidence shifts from the proponent of the will whose execution is at issue to the contestants.

The presumption is rebuttable, but it is established that, to overcome the presumption, the contestant must present 'clear and satisfactory' proof of lack of due execution.

Absent evidence to the contrary, the presumption of due execution will be sufficient to establish that fact. And it will be similarly sufficient notwithstanding that the persons who attested the will are unable to recall that the formalities for due execution of a will were complied with.

In addition, the courts have recognized that the presumption is not necessarily overcome by contrary testimony of the persons who subscribed the will; in this situation the view is taken that the witness' testimony, being inconsistent with the facts which he has previously attested, is to be examined carefully to assure that he is not testifying fraudulently."

Some of the language of Justice Tomlinson in Fann v. Fann seems to align Tennessee with those cases holding contrary to the majority rule. With great deference to the learned and much lamented Justice Tomlinson, we respectfully submit that his opinion in Fann v. Fann fails to delineate the difference between the *presumption of law* obtaining by proof of a testator's signature and two subscribing witnesses thereto with no atttesta-

tion clause and the *presumption of fact* which arises upon proof of the signature of the testator and the signatures of the two attesting witnesses to a will containing an attestation clause which recites a statutory execution of the will.

The cases of Rose v. Allen, 1 Cold. 23, 41 Tenn. 23; Beadles v. Alexander, 9 Baxt. 604, 68 Tenn. 604, and Simmons v. Leonard, 91 Tenn. 183, 18 S.W. 280, 30 Am. St.Rep. 875, were cited by Justice Tomlinson in support of the opinion in Fann v. Fann. In neither Rose v. Allen nor in Beadles v. Alexander did the wills in litigation bear attestation clauses, only the signatures of attesting witnesses.

The case of Simmons v. Leonard, supra, was cited as holding that the same presumption arises from proof of signatures of the testator and subscribing witnesses without an attestation clause as arises from the proof of the signatures of the testator and subscribing witnesses below an attestation clause. We interpret Simmons v. Leonard differently.

In Simmons v. Leonard there was an attestation clause bearing the names of two witnesses. The signature of one of the witnesses was genuine. The proof showed that the other witness, Cochran, did not sign the will. Cochran was so nearly blind he could not see to write his name. The name of Cochran was signed to the will by one of the devisees under the will, namely a Dr. Leonard, and bore no cross or mark to show it was signed on behalf of Cochran.

Cochran was dead at the time of trial but his deposition had been taken in a chancery suit and was used in

the will contest case. Cochran deposed that he asked Dr. Leonard to sign for him. However, Cochran could not identify the will propounded as the one he asked Dr. Leonard to sign for him. The Supreme Court observed that Dr. Leonard was a devisee and interested in the will and his subscription for Cochran was utterly ineffectual.

The very essence of the holding in Simmons v. Leonard is to be found in the final paragraph of the opinion which we copy as follows:

"There is no dispute as to the facts with reference to Cochran's attempted subscription. Whether under these facts he was a competent subscribing witness is a question of law. We think he clearly was not. Then, in legal contemplation, there was but one subscribing witness, and the judgment in favor of the will was necessarily erroneous.

Reverse and enter judgment here."

Upon the trial below apparently neither the Trial Judge nor the jury believed the testimony of the Barton brothers that they did not read the attestation clause and that they did not know that they were witnessing a will of Mr. Guy Weaver.

While Guy Weaver may have made what some persons think is an unjust or improper distribution of his property, the evidence is uncontradicted that the paper writing contained his wishes; that he was mentally capable of making the will; that he signed the document as his will and that he attempted to get two valid subscribing

witnesses to his will as required by law. The two witnesses chosen by Mr. Weaver to be his subscribing witnesses signed their names below a written statement reciting that Mr. Weaver had signed the will in their presence and that they were then signing the will in his presence at his request and in the presence of each other.

Since Fann v. Fann, by the statement of our Tennessee Supreme Court, admittedly reached an undesirable result, the holding of Fann v. Fann should not be expanded but limited to the very facts of that case.

■ We hold that the Trial Judge properly allowed the jury to weigh all the evidence and determine if the attesting witnesses spoke the truth at the time they signed the will under the attestation clause or spoke the truth at the time of the trial. This is a proper case to announce the rule in Tennessee to be that proof of the genuine signatures of the testator and two competent attesting witnesses to a will along with an attestation clause reciting that the will was executed according to the Uniform Will Act (T.C.A. Section 32-104) creates a rebuttable presumption of fact of due execution of the will and makes a prima facie case for the proponent. The testimony by the attesting witnesses denying the recitations of the attestation clause is admissible to rebut the presumption and makes an issue for the jury to decide. Judge Phillips in his Pritchard on Wills, Vol. I, Section 336, page 318, says that such testimony should be viewed with suspicion. Assignments of error I through VII are overruled.

■ Assignments of errors VIII and IX complain of the Trial Judge's charge and the failure of the Trial

Judge to make additional charges to the jury. No special requests were submitted in support of the contestant's theory. The will was introduced in evidence; the Trial Judge read T.C.A. Section 32-104 to the jury; he stated clearly to the jury that it was the contention of the contestant that the testator, Mr. Guy Weaver, did not signify to the attesting witnesses that the instrument was his will and that they did not see him sign the will. His Honor the Trial Judge also charged the jury that if they found from the preponderance of the proof that Guy Weaver executed the instrument in conformity with the statute they should find in favor of the will. Absent any special requests by the contestant, we hold that the charge of the Trial Judge was sufficient to present to the jury the theories of the respective parties and the determinative issue to be decided by them, namely whether or not the subscribing witnesses, Barton brothers, told the truth when they testified or whether they told the truth when they signed the attestation clause. Any errors in the Trial Judge's charge we hold to be harmless errors and assignments of errors VIII and IX are respectfully overruled. T.C.A. Section 27-117.

The judgment of the lower court is affirmed and the appeal is dismissed at the cost of the appellant.

Matherne and Taylor, JJ., concur.