Larry W. DOBSON and G.O. Dobson, Jr. and as next friends of Jimmy Wayne Dobson, a non compos mentis without guardian, Plaintiffs/Contestants/Appellees,

v.

Virginia Dobson SHORTT, individually and as administratrix of the estate of G.O. Dobson, Sr., Defendant/Proponent/Appellant.

Court of Appeals of Tennessee, Western Section, at Jackson.

March 11, 1996.

Application for Permission to Appeal Denied by Supreme Court July 8, 1996.

D.D. Maddox, Maddox, Maddox & Maddox, Huntingdon, for Defendant/Proponent/Appellant.

Robert T. Keeton, Jr. and Laura A. Keeton, Law Offices of Robert T. Keeton, Jr., Huntingdon, Andrew B. Frazier, Jr., Frazier & Whitworth, Camden, for Plaintiffs/Contestants/Appellees.

TOMLIN, Senior Judge.

This is a will contest case. G.O. Dobson, Sr. ("testator") died on February 21, 1991 in Benton County. Shortly thereafter, Virginia Dobson Shortt ("defendant"), the testator's daughter and administratrix of his estate, filed a petition in the Chancery Court of Benton County to probate the will. The will was admitted to probate in common form.

Larry W. Dobson, G.O. Dobson, Jr., and Jimmy Wayne Dobson, a non compos mentis without guardian ("plaintiffs"), testator's surviving sons, filed a petition contesting the will. They contended that the will was invalid because it was not executed in compliance with the provisions of the Uniform Wills Act, codified at T.C.A. § 32-1-104 (1984). The case was thereafter certified to the Circuit Court of Benton County for a jury trial on the issue of devisavit vel non. At trial, following the presentation of all the proof for both parties, the trial court granted plaintiffs' motion for a directed verdict. On appeal, defendant has presented two issues for our consideration: whether the trial court erred (1) in granting plaintiffs' motion for directed verdict, and (2) in refusing to grant

defendant's motion for directed verdict. For the reasons hereinafter stated, we reverse and remand for a new trial.

Under the terms of testator's will dated October 9, 1986, plaintiffs and defendant were named as beneficiaries, although defendant received the bulk of testator's estate. The will consisted of four typewritten, lined pages that bore only the signature of the testator and a handwritten date of execution. The attestation clause and separate affidavit were typed on plain, legal-sized paper and bore the signatures of the two attesting witnesses, Anita Wright and Warren Cantrell, who were both employees of the Benton County Government at the time the will was executed. The affidavit was notarized by Jimmy Wiseman, the Benton County Register of Deeds. At the time the will was entered for probate, these two documents had been attached to the will.

 The attestation clause reads as follows:

G.O. Dobson, of Benton County, Tennessee, signed the foregoing instrument in our presence on the 24th day of April, 1987, publishing and declaring it to be his Last Will and Testament, and as witness whereof, we two do now at his request, in his presence and in the presence of each other, hereto subscribe our names.

| NAMES | ADDRESS |
|---|---|
| /s/Anita Wright | Wright St. Camden, TN 38320 |
| /s/Warren Cantrell | Rt. 1 Big Sandy, TN |

The affidavit reads as follows:

AFFIDAVIT

"We, the undersigned, being first duly sworn, make oath that G.O. Dobson, on the 24th day of April, 1987, declared and signified to us that this instrument is his Last Will and Testament; that he signed said instrument in our presence and sight; that we, at his request and in his presence and in the presence of each other, then subscribed our names hereto as attesting witnesses; that at the time of execution, the Testator was more that [sic] 18 years of age, of sound mind and disposing memory and did not appear under any undue influence and that the undersigned, each being more than 18 years of age, make and sign

this affidavit at the Testator's request on the day and year first above written.

/s/Anita Wright

/s/Warren Cantrell

SWORN and subscribed before me this the 24th day of April, 1987.

/s/Jimmy Wiseman

NOTARY PUBLIC

My Commission Expires Sept. 20, 1989

With regard to the attestation clause, plaintiffs contend that (1) testator did not sign the will in the presence of the alleged witnesses, (2) testator did not acknowledge at any time to either of the two witnesses that the instrument was his Last Will and Testament, and (3) the witnesses did not sign the attestation clause in the presence of each other.

At the trial below, Anita Wright stated that she signed the attestation clause and affidavit in the office of Jimmy Wiseman. She proceeded to give the following testimony regarding her role in the execution of the will:

Q. Was Mr. Ty Dobson—I call G.O. Dobson, Sr. Ty Dobson, you understand that?

A. Uh-huh.

Q. Was he there?

A. Yes, sir.

Q. Did you execute these documents there?

A. Yes, sir.

Q. You and Mr. Cantrell together?

A. Yes, sir.

Q. After you signed those documents did Mr. Wiseman take your oath on that separate Affidavit?

A. I do not recall him doing it.

Q. Well, you signed it, didn't you?

A. Right.

On cross examination, Wright gave the following testimony:

Q. Mrs. Wright, what purports to be the Will of Mr. Dobson is written on, I guess, a legal pad or something, a lined paper. It consists of four typewritten pages. This Affidavit is on—I believe this is 14-inch paper, is it not?

A. Yes.

Q. This Affidavit that you signed and you're testifying about here today consists of two pages, one page plus a—well, two pages actually, the Attestation Clause and the Affidavit; is that right?

A. Yes.

Q. Did you ever see these four pages?

A. No, sir.

Q. You never saw them?

A. No, sir.

Q. What you saw up there that day was simply these two pages; isn't that correct?

A. Yes.

. . . .

Q. The truth of the matter is somebody handed you some papers and said, "Here, witness this," and you just signed your name and walked out, didn't you?

A. Yes, sir.

. . . .

Q. All right. But your best recollection is did you see G.O. Dobson sign a document?

A. No.

Q. He never acknowledged to you and said, "Mrs. Wright, this is my signature."

A. No.

Q. Or anything like that?

A. No.

Q. Nobody else came into that room and said, "This is G.O. Dobson's signature."

A. No, sir.

Warren Cantrell, the other attesting witness, testified on direct examination that although he had signed the attestation clause and affidavit in 1987, he had no independent recollection of whether the testator was present at the time of the signing. Similarly, Jimmy Wiseman had no independent recollection of the events surrounding the will's execution.

In passing on a motion for directed verdict, both the trial court and the reviewing court on appeal are required to look to all the evidence, take the strongest legitimate view of it in favor of the opponent of the motion, and allow all reasonable inferences from it in his favor. The court must discard

all countervailing evidence, and if there is then any dispute as to any material determinative evidence, or any doubt as to the conclusion to be drawn from the whole evidence, the motion must be denied. *Tennessee Farmers Mut. Ins. Co. v. Hinson,* 651 S.W.2d 235, 237–38 (Tenn.App.1983).

In *Mitchell v. Smith,* 779 S.W.2d 384, 387 (Tenn.App.1989), the middle section of this court made these observations concerning the role of directed verdicts in will contest cases:

Directed verdicts are available in will contest cases to the same extent that they are available in other civil cases. They are appropriate when the evidence supports one conclusion, but are inappropriate when the material facts are in dispute or when there is substantial disagreement concerning the conclusions to be drawn from the evidence.

*Id.* (citations omitted).

The statutory requirements for the execution of a will are set forth in T.C.A. § 32–1–104 (1984), which provides:

*32–1–104. Will other than holographic or nuncupative.*—The execution of a will, other than a holographic or nuncupative will, must be by the signature of the testator and of at least two (2) witnesses as follows:

(1) The testator shall signify to the attesting witnesses that the instrument is his will and either:

(A) Himself sign;

(B) Acknowledge his signature already made; or

(C) At his direction and in his presence have someone else sign his name for him; and

(D) In any of the above cases the act must be done in the presence of two (2) or more attesting witnesses.

(2) The attesting witnesses must sign:

(A) In the presence of the testator; and

(B) In the presence of each other.

In the case before us, as can be seen from her testimony quoted above, Anita Wright testified contrary to the specific recitals contained in the attestation clause to testator's will, which she admittedly signed. As a rule, proof of the validity of the signature of the testator and of those of the attesting witnesses raises a presumption that the witnesses signed the will in accordance with the recitals in the attestation clause. *See, e.g., Needham v. Doyle,* 286 S.W.2d 601, 615–16 (Tenn.App.1955).

Plaintiffs rely heavily upon the opinion of our supreme court in *Fann v. Fann,* 208 S.W.2d 542 (Tenn.1948) in support of their contention that the trial court was correct in granting a directed verdict in their favor, thereby setting aside the will. The *Fann* court held that the presumption of the validity of the execution of the will can be overcome by positive testimony from an attesting witness contrary to the recitals contained in the attestation clause. In affirming the court of appeals, which had affirmed the trial court's denial of the probate of the will, the *Fann* court stated that where the witness to a will contradicts the recitals in their statements or deny their attestations, the evidence in favor of the will must be "clear and full" to substantiate it. *Id.* at 544.

In *Whitlow v. Weaver,* 478 S.W.2d 57 (Tenn.App.1970), this court limited the holding in *Fann* to the facts of that case. In *Whitlow,* the testator's will contained an attestation clause, which was witnessed by two of testator's neighbors. At trial, the witnesses to the will testified that testator failed to disclose to them that the document was a will, and that the document was folded in such a way that the testator's signature was obscured. They further stated that they did not know whether the testator had signed the will prior to the time he brought it to them to sign, but that he did not sign it in their presence. They also stated that they did not read the attestation clause above their signatures. The contestants contended that the proponents had not proven due execution of the will, and sought a directed verdict. The motion for directed verdict was denied, and the case was submitted to the jury, who found in favor of the will. *Id.* at 58–59.

In declining to follow *Fann,* our court noted a legal distinction between *Fann* and *Whitlow,* as well as concern expressed by Justice Tomlinson as to the undesirable re-

sult reached in that case. Specifically, this court observed that when *Fann* reached the supreme court, there was already a concurrent finding of fact by the trial judge and the court of appeals that the attesting witnesses did not sign the will in the presence of each other as required by statute. These concurrent findings were binding on the supreme court. *Id.* at 60 (citation omitted).

The *Whitlow* court further observed that Justice Tomlinson himself recognized the evils which could result from an attesting witness denying the recitations contained in the attestation clause above his signatures. This court stated this policy consideration as follows:

> Attesting witnesses should not have the absolute power of life and death over a will in those cases where the will was signed only in the presence of two witnesses. Wills are seldom executed and/or witnessed in public.

*Id.* at 60.

The *Whitlow* court held that the trial court properly allowed the case to go to the jury to determine the validity of the will. This court noted that of the three opinions cited by Justice Tomlinson in support of his opinion in *Fann*, none involved wills containing attestation clauses, but only the signatures of attesting witnesses. *See Rose v. Allen*, 41 Tenn. (1 Cold.) 23 (1860); *Beadles v. Alexander*, 68 Tenn. 604 (1877); *Simmons v. Leonard*, 91 Tenn. 183, 18 S.W. 280 (1892). This court also held that Justice Tomlinson erroneously construed the holding of *Simmons*, which dealt primarily with the issue of the competency of a nearly blind subscribing witness. After so doing, the court stated:

> [W]e respectfully submit that [Justice Tomlinson's] opinion in *Fann v. Fann* fails to delineate between the *presumption of law* obtaining by proof of a testator's signature and two subscribing witnesses thereto with no attestation clause and the *presumption of fact* which arises upon proof of the signature of the testator and the signatures of the two attesting witnesses to a will containing an attestation clause which recites a statutory execution of the will.

*Id.* at 61.

The *Whitlow* court concluded as follows:

> This is a proper case to announce the rule in Tennessee to be that proof of the genuine signatures of the testator and two competent attesting witnesses to a will along with an attestation clause reciting that the will was executed according to the Uniform Will Act [T.C.A. § 32–1–104] creates a rebuttable presumption of fact of due execution of the will and makes a prima facie case for the proponent. The testimony by the attesting witnesses denying the recitations of the attestation clause is admissible to rebut the presumption and makes it an issue for the jury to decide.

*Id.* at 62.

In the case before us, the fact that there was a properly executed attestation clause and affidavit reciting the statutory requirements for the proper execution of a will created a rebuttable presumption in favor of the will's valid execution. The witness Anita Wright's testimony was admissible to rebut that presumption, thereby creating an issue for the jury.

For the foregoing reasons, the judgment of the trial court is reversed. This cause is remanded to the trial court for a new trial not inconsistent with this opinion. Costs in this cause on appeal are taxed to plaintiffs, for which execution may issue if necessary.

CRAWFORD, P.J., and FARMER, J., concur.