IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 9, 2018 Session

**IN RE ESTATE OF JIMMY D. HARRIS**

**Appeal from the Probate Court for Shelby County**
**No. PR-5044      Karen D. Webster, Judge**

_____

**No. W2016-01768-COA-R3-CV**
_____

Wife of the decedent appeals the probate court's denial of her petition to admit a will to probate. Because we conclude that the testimony presented did not rebut the presumption of due execution created by the will's attestation clause, we reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court Reversed and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which ARNOLD B. GOLDIN and BRANDON O. GIBSON, JJ., joined.

Heather Patrice Hogrobrooks Harris, Memphis, Tennessee, Pro se.

**OPINION**

**Background**

Petitioner/Appellant Heather Patrice Hogrobrooks Harris ("Appellant") was the wife of Jimmy Harris ("Testator"). Testator passed away on March 10, 2015, leaving two living children. On December 16, 2015, Appellant filed a petition to open Testator's estate, to be named executrix of the estate pursuant to Testator's will, and for letters testamentary to be issued. Attached to the petition was a will purportedly executed by Testator on December 7, 2014. The will made specific bequests to Testator's children with all remaining property distributed to Appellant. The will also contained a notarized statement concerning the execution of the will signed by witnesses Beatrice S. Thornton and Requita Peete. Also on December 16, 2015, the Shelby County Probate Court ("the trial court") entered an order opening Testator's estate, appointing Appellant as administrator, requiring Appellant to execute a bond, and setting a hearing to determine

whether the will should be admitted. Appellant thereafter executed a bond, but the hearing on the admission of the will was continued several times.

A hearing was eventually held on May 24, 2016. Appellant, Ms. Thornton, the notary who notarized the will, Kathy Lanier, and Testator's children testified.[1] The statement of the evidence showed that the will was executed by Testator on December 7, 2014, and purportedly witnessed by two of Testator's longtime employees. Ms. Thornton, the only witness to the will to testify, could not recall certain facts related to the signing of the will, as detailed *infra*. Following the signatures of the witnesses and Testator, Testator and Appellant drove to the home of another of Testator's employees, Ms. Lanier, who notarized the will and acknowledged the signatures of the testator and the two witnesses. Ms. Lanier specifically testified that she was familiar with both the signature of Testator and the witnesses due to her role as bookkeeper in Testator's business.

Following this evidence, the trial court orally ruled that the will should not be admitted to probate. An order memorializing the trial court's ruling was entered on July 13, 2016. In its order, the trial court opined that the purported will was not duly executed. While one of the witnesses to the purported will attended the hearing and testified, according to the trial court, her testimony reflected that she was waiting tables at the time she signed the document and could not remember the testator ever stating that the document was his will. The witness also could not remember if both witnesses signed in one another's presence. Further, Ms. Lanier testified that while she had notarized the document, she had not seen the testator nor the witnesses actually sign the document. Consequently, the trial court determined that the will was not executed in accordance with applicable statutes and denied its admission to probate. The trial court certified its judgment as final pursuant to Rule 54.02 of the Tennessee Rules of Appellate Procedure. Appellant filed a timely notice of appeal to this Court.

### Issues Presented

Appellant raises several issues, which are taken from her appellate brief:

1. The probate court erred in denying probate on the basis that the will did not comply with Tenn. Code Ann. § 32-1-104 and/or Tenn. Code Ann. § 32-2-110 where the witness signatures were acknowledged pursuant to Tenn. Code Ann. § 8-16-112.
2. The probate court erred in denying probate on the basis that the will was not executed in conformance with Tenn. Code Ann. § 32-1-104

---

[1] No transcript from the hearing is contained in the record. Our recitation of the facts therefore comes from the statement of the evidence prepared by Appellant, as well as the trial court's order.

2

due to the will not having been signed in the presence of the witnesses.

3. The probate court denied Appellant a fair hearing and fair tribunal, resulting in a violation of the Appellant's right to due process of law.

4. Appellant has suffered a taking without just compensation due to the denial of the entry of the will for probate.

5. Appellant was denied notice and equal protection of the law when the trial judge essentially prosecuted a will contest by questioning the testator's children regarding the mental capacity of the testator, in violation of Tenn. Code Ann. § 32-4-104.

**Analysis**

This case involves the trial court's denial of a petition to admit a will to probate following a bench trial. In appeals from bench trials, this Court reviews the trial court's factual findings de novo with a presumption of correctness, unless the preponderance of the evidence is otherwise. *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014). No presumption of correctness attaches to the trial court's legal conclusions. *Id.* In particular, this case involves the interpretation and construction of statutes, which we also review de novo with no presumption of correctness. *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 366 (Tenn. 2012). In construing statutes, our goal is to effectuate the legislative purpose based on the text of the statute, unless the language is ambiguous. *See* **id.** (citing *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 527 (Tenn. 2010)).

Before proceeding to address the merits on appeal, we must note that while Appellant was represented by counsel for the bulk of the trial court proceedings, Appellant is self-represented in this appeal. As such, we keep the following considerations in mind:

> Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.
> The courts give pro se litigants who are untrained in the law a certain amount of leeway in drafting their pleadings and briefs. Accordingly, we measure the papers prepared by pro se litigants using standards that are less stringent than those applied to papers prepared by lawyers.

Pro se litigants should not be permitted to shift the burden of the litigation to the courts or to their adversaries. They are, however, entitled to at least the same liberality of construction of their pleadings that Tenn. R. Civ. P. 7, 8.05, and 8.06 provide to other litigants. Even though the courts cannot create claims or defenses for pro se litigants where none exist, they should give effect to the substance, rather than the form or terminology, of a pro se litigant's papers.

*Hessmer v. Hessmer*, 138 S.W.3d 901, 903–04 (Tenn. Ct. App. 2003) (citations omitted).

## I.

The genesis of the appeal is Appellant's argument that the trial erred in denying admission of Testator's will to probate where the trial court found that the requirements of Tennessee Code Annotated sections 32-1-104(a) and 32-2-110 had not been proven. In particular it appears that Appellant takes issue with the trial court's decision to hold a hearing on the validity of the will and its execution where "[t]here was no basis from the face of the will and the testimony of the authenticity of the testator's signature that the will should have been denied probate."

To the extent Appellant is arguing that the trial court should not have held a hearing because the will was valid on its face, we conclude that such issue is waived. In this case, the trial court in opening Testator's estate specifically stated that a hearing would occur to determine whether to admit the will. The hearing was continued several times. At no point prior to the hearing did Appellant object to this procedure. Likewise, the statement of the evidence does not show that Appellant objected to this procedure at trial. Issues may not be raised for the first time on appeal. *See In re Adoption of E.N.R.*, 42 S.W.3d 26, 32 (Tenn. 2001) (holding an issue waived where it was not properly presented to the trial court). As such, any issue raised as to the procedure utilized in the trial court is waived.

Turning to the merits of this case, we note that the trial court followed a two-part procedure in this case. First, the trial court determined that the affidavits accompanying the will did not comply with Tennessee Code Annotated section 32-2-110. In the absence of proper affidavits to prove the will, the trial court then considered "another method of proving the will in Court," i.e., the testimony of the witnesses regarding their compliance with Tennessee Code Annotated section 32-1-104.

In order to analyze whether the will was properly executed in this case, a brief discussion of the applicable statutes is helpful. We begin with section 32-1-104, which contains the requirements applicable to execution of wills:

4

The execution of a will, other than a holographic or nuncupative will, must be by the signature of the testator and of at least two (2) witnesses as follows:

> (1) The testator shall signify to the attesting witnesses that the instrument is the testator's will and either:
>
> > (A) The testator sign;
> > (B) Acknowledge the testator's signature already made; or
> > (C) At the testator's direction and in the testator's presence have someone else sign the testator's name; and
> > (D) In any of the above cases the act must be done in the presence of two (2) or more attesting witnesses.
>
> (2) The attesting witnesses must sign:
>
> > (A) In the presence of the testator; and
> > (B) In the presence of each other.[2]

Tenn. Code Ann. § 32-1-104(a). Section 32-2-110 provides an avenue to prove these requirements without the need of live testimony:

> Any or all of the attesting witnesses to any will may, at the request of the testator or, after the testator's death, at the request of the executor or any person interested under the will, make and sign an affidavit before any officer authorized to administer oaths in or out of this state, stating the facts to which they would be required to testify in court to prove the will, which affidavit shall be written on the will or, if that is impracticable, on some paper attached to the will, and the sworn statement of any such witness so taken shall be accepted by the court of probate when the will is not contested as if it had been taken before the court.

---

[2] We note that section 32-1-104 provides an additional subsection regarding signatures on affidavits being sufficient to constitute signatures on wills. *See* Tenn. Code Ann. § 32-1-104(b) (applying to wills executed before July 1, 2016, like the will at issue in this case). The subsection goes on to provide, however, that under this particular subsection, where "witness signatures on the affidavit are treated as signatures on the will, the affidavit shall not also serve as a self-proving affidavit under § 32-2-110." Tenn. Code Ann. § 32-1-104(b)(2). Here, the will and the purported affidavit are contained on a single document, and the document contains only a single signature from each witness. Regardless, the trial court here clearly considered the purported affidavits under section 32-2-110, and no issue has been raised regarding the language of section 32-1-104(b). Moreover, because of our conclusion that the affidavits were ineffective, any issue as to whether they should not be considered affidavits by virtue of section 32-1-104(b) is pretermitted.

5

Tenn. Code Ann. § 32-2-110. In the absence of such an affidavit, however, at least one witness must testify to the requirements of section 32-1-104(a) where a will is uncontested. *See* Tenn. Code Ann. § 32-2-104(a) ("Written wills with witnesses, when not contested, shall be proved by at least one of the subscribing witnesses, if living.").

In support of her assertion that the will at issue contains a self-proving affidavit sufficient to meet the requirements of section 32-2-110, Appellant points to the following language included after Testator's signature on the will:

> We, the undersigned, hereby certify that the above instrument, which consists of 4 pages, including the page(s) which contain the witness signatures and affidavit, was signed in our sight and presence by Jimmy D Harris (the "Testator"), who declared this instrument to be his/her Last Will and Testament and we, at the Testator's request and in the Testator's sight and presence, and in the sight and presence of each other, do hereby subscribe our names as witnesses on the date shown above.

Following this clause, both witnesses signed. On the following page, notary Ms. Lanier states that the statement was "[s]ubscribed, sworn to and acknowledged before me by [Testator] and subscribed and sworn to before me by [Ms. Thornton and Ms. Peete] witnesses, this 7th day of December, 2014." The document is then signed by Ms. Lanier and includes her official stamp.

Clearly, this statement contains all of the necessary information to show proper execution of the will under section 31-1-104(a); the document states that both witnesses were informed that the document was Testator's will, that the will was signed at Testator's request, and that both Testator and the witnesses signed in each other's presence. Indeed, the trial court did not take issue with the statement contained in the purported affidavit but rather the manner of execution by the notary, based upon the testimony presented at the hearing. Specifically, the trial court found that,

> [R]egarding the proof of the will via affidavit, the Court finds that neither of the witnesses signed the purported will before an officer authorized to administer oaths, as testified by the notary. Thus, one of the required elements to prove the will via affidavit is not met. Therefore, the Court concludes that the affidavit is ineffective in proving that the execution of the will was proper . . . .

Thus, the trial court's ruling rests on its interpretation of section 32-2-110 requiring that the witness providing the affidavit "make and sign an affidavit **before** any officer authorized to administer oaths in or out of this state." Tenn. Code Ann. § 32-2-110.

Appellant asserts that the trial court's interpretation of section 32-2-110 is flawed because it ignores two key facts: (1) Tennessee law does not require physical presence for the signing of an affidavit where the notary has personal knowledge sufficient to acknowledge a signature; and (2) Ms. Lanier undisputedly had personal knowledge regarding the authenticity of the signatures of both Testator and the witnesses. We therefore turn to the statute governing the powers of Tennessee notaries, Tennessee Code Annotated section 8-16-112:

> A Tennessee notary public is authorized to act in any county in the state and has the power to acknowledge signatures upon personal knowledge or satisfactory proof, to administer oaths, to take depositions, to qualify parties to bills in chancery, and to take affidavits, in all cases. Furthermore, in all such cases the notary public's seal shall be affixed and the notary public shall sign such documents in ink by the notary's own hand unless otherwise provided by law.

Tenn. Code Ann. § 8-16-112 (2018).[3] Appellant asserts that this statute allows a Tennessee notary to notarize a signature on a document in spite of not witnessing the signature personally, so long as the notary has personal knowledge to confirm the authenticity of the signature.

This Court, however, has previously rejected such a practice and held that a notary must "personally witness the signature." *See* ***Regions Bank v. Bric Constructors, LLC,*** 380 S.W.3d 740, 748 n.7 (Tenn. Ct. App. 2011). In ***Bric Constructors***, this Court expressed "dismay" over the plaintiff banks' practice wherein notaries "habitually notarized signatures that they did not witness[.]" ***Id.*** As the court explained:

> Here, for example, the [powers of attorneys] at issue included the sworn oath of Bank notary public Kay McDonald representing that the document

---

[3] Section 8-16-112 was recently amended, with the amendment scheduled to become effective July 1, 2019. The amended version of this statute does not alter the above language except to designate it as subsection (a) and includes the following additional language as subsection (b):

> The requirement of a notary public's signature in ink or by the notary's hand and a seal is satisfied if an electronic signature or a digitized image of a wet signature of the person authorized to perform that act, and all other information required to be included, is attached to or logically associated with the document or signature. A physical or electronic image of a stamp, impression, or seal need not accompany an electronic signature.

Clearly, this statute does not apply in this case and even if applicable, would have no effect on the resolution of this appeal.

was "[s]ubscribed and sworn before me" on the date in question. This is pursuant to Tennessee Code Annotated § 8-16-112, which only authorizes a notary public "to acknowledge signatures upon personal knowledge or satisfactory proof" that the person signing the document is in fact who he or she purports to be. This indicates that the notary should **personally witness** the signature and if the person signing the document is not personally known to the notary, the notary should have satisfactory proof that the person signing the document is in fact the person whose name appears on the signature line.

*Id.* (emphasis added). While the above statement is arguably dicta, the Tennessee Supreme Court has held that "it is a fact that a pronouncement not necessary to the decision of a case, though incidental, and when 'apparently made with consideration and purpose, is at least a judicial dictum, as distinguished from mere obiter dictum, and is entitled to much weight.'" *Rose v. Blewett*, 202 Tenn. 153, 162, 303 S.W.2d 709, 712–13 (Tenn. 1957) (quoting *Taylor v. Taylor*, 162 Tenn. 482, 40 S.W.2d 393, 395 (Tenn. 1931)); *see also Holder v. Tennessee Judicial Selection Comm'n*, 937 S.W.2d 877, 882 (Tenn. 1996) ("[T]here is a legal distinction between obiter dictum and judicial dictum. Judicial dictum refers to pronouncements in an opinion that are long regarded by the bench and bar as establishing the rule of law. Although such language may not be necessary to the decision in a case, judicial dictum is controlling as precedent.") (citation omitted). Appellant has offered this Court no authority to persuade us that section 8-16-112 should be read in the manner that she suggests, as opposed to the manner adopted by the court in *Bric Constructors*.

Other authority supports this position. For example, this Court has previously construed a now-amended statutory requirement that an officer notarize a form related to a driver's refusal to submit to a breath alcohol test as generally requiring that the officer "personally appear before a Notary and swear to the form" in order for the form to be "properly notarized." *Hookanson v. Jones*, 757 S.W.2d 347, 350 (Tenn. Ct. App. 1988). *But see Montgomery v. Montgomery*, No. C.A. 1290, 1989 WL 105645, at *1 (Tenn. Ct. App. Sept. 13, 1989) ("Unlike acknowledgments which require personal attendance before a notary, we know of no rule or statute which prohibits the administration of an oath by telephone, although the better practice is confrontation by the notary of the affiant.").

Here, there is no dispute that neither of the witnesses personally appeared before Ms. Lanier for purposes of notarizing any affidavit. Likewise, the evidence shows that Ms. Lanier had no conversations with either witness regarding the documents or the authenticity of the signatures and no oath was ever administered. As such, we must conclude the purported affidavit was not executed in strict compliance with section 32-2-110's requirement that they be "ma[d]e and sign[ed] . . . before any officer authorized to

administer oaths in or out of this state." *See **In re Estate of Chastain***, 401 S.W.3d 612, 619 (Tenn. 2012) ("Tennessee courts have consistently interpreted statutes prescribing the formalities for execution of an attested will as mandatory and have required strict compliance with these statutory mandates."). The presumption that the notary public in this case performed her acts correctly has therefore been rebutted. *See **In re Marsh***, 12 S.W.3d 449, 453 (Tenn. 2000) ("The acts of a notary public are thus presumed to be performed correctly."). The trial court did not err in declining to consider the purported affidavit as sufficient evidence that the requirements of section 32-1-104(a) had been met. Like the trial court, we next proceed to consider the evidence presented regarding compliance with section 32-1-104(a).

## II.

In this case, Ms. Thornton, as witness to the will, testified, along with Appellant, concerning the execution of the will. Only Ms. Thornton's testimony on this issue is included in the statement of evidence. According to Ms. Thornton, on the day in question, Testator "came in to the restaurant and said he needed his will witnessed." With regard to the execution of the will, Ms. Thornton testified "[t]hat she witnessed him signing the will and knew that it was his will as declared by the decedent upon him sitting down in the coffee shop." Ms. Thornton also confirmed that the other signature on the will indeed belonged to Ms. Peete. The statement of the evidence recites, however, that "[u]nder the questioning of the judge, [Ms. Thornton] could not remember unequivocally where the other witness was standing when [Testator] actually signed his will."

Based upon the testimony presented, the trial court made the following findings:

> This Court finds the pertinent facts as presented by [Ms.] Thornton[4] to be as follows: [Ms.] Thornton recalls Mr. Harris asking her to sign the document; however, she does not recall Mr. Harris stating that this was his last will and testament; she did not recall if the other witness, [Ms.] Peete, was present at the time that Mr. Harris requested her to sign the document; and she did not recall if the other witness, [Ms.] Peete, was present when she witnessed the will.
>
> Considering these facts against the requirements to properly execute a will, this Court further finds that 1) there is not any proof, from the witness, regarding [Testator's] signifying (or declaring) the purported document to be his will and 2) there is not any proof that the testator signed in the presence of two witnesses or that the two witnesses signed in the

---

[4] Throughout its decision, the trial court refers to the witness as Ms. Thorton. It appears, however, that the correct spelling of the witness's name is Thornton. We have therefore altered the trial court's order to reflect the correct spelling for ease of reading.

9

presence of the testator and of each other. Ms. Thornton just could not recall the details, as she was also working, waiting tables at the CK's Coffee Shop, during the time the purported document was executed. As a result of the foregoing, the Court concludes that the purported will of [Testator] was not executed in accordance with Tenn. Code Ann. § 32-1-104(a). Therefore, the purported will shall not be admitted to Probate.

It is of importance to note that the testimony of [Appellant] Harris appeared to attempt to cure some of the defects in the evidence, in that she testified that she witnessed [Testator] ask Ms. Thornton and Ms. Peete witness the document and that the [Testator] and both witnesses were all in the room at the same time when [Testator] executed the document purporting to be a will. However, that testimony and particularly her additional testimony that she did not recall if both of the witnesses were sitting with [Testator] when he asked them to witness, that she did know that both of the witnesses were in the same room at the time [Testator] requested them to witness, and that she did not recall if [Testator] informed the witnesses that this was his last will and testament; just do not fulfill the required elements of 'signifying' (declaring) the Testator's will and 'signing in the presence' of each other.

Further, [Appellant's] testimony cannot be considered, as she did not sign the will as a witness. Had she signed the will as a witness, the Court would be hesitant to give her testimony any weight, as she is an interested party and takes the majority of [Testator's] Estate under the purported will.

Here, we must agree that Ms. Thornton's testimony, as both recited in the statement of the evidence or summarized in the trial court's order, fails to establish that Ms. Peete was present when Testator signed the will or that Testator acknowledged an already made signature to Ms. Peete. Further, Ms. Thornton's testimony does not establish that Testator signified that the document was his will to Ms. Peete.[5] *See In re Estate of Ross*, 969 S.W.2d 398, 400 (Tenn. Ct. App. 1997) (citing *Ragsdale v. Hill*, 37 Tenn.App. 671, 269 S.W.2d 911 (Tenn. 1954)) ("It is well established that the act of witnessing a will is

---

[5] We note that the trial court's finding that Testator also did not inform Ms. Thornton that the document was his will is not supported by the statement of the evidence in this case. As previously discussed, the statement of the evidence provides that Ms. Thornton testified that Testator stated that he needed his will signed and that she knew the document was Testator's will. This inconsistency, however, has no effect on the trial court's ultimate ruling, as the trial court correctly found that Ms. Thornton's testimony, as evidenced by the statement of the evidence, does not include proof that Testator made the same statement to Ms. Peete or that Ms. Peete was aware that the document was Testator's will. Moreover, as discussed *infra*, because we reverse the trial court's decision on another basis, this inconsistency in the trial court's order is immaterial to the result in this case.

different from witnessing an ordinary signature and that the attesting witness must be aware that the document is a will.").

Despite the trial court's findings, however, we cannot agree that the trial court correctly denied admission of the will to probate on the basis of Ms. Thornton's inability to prove the requirements of section 32-1-104(a). Importantly, although we agree with the trial court that the statement in the will concerning its execution does not qualify as a self-proving affidavit pursuant to section 32-2-110, it appears that the trial court failed to consider this statement in the nature of an attestation clause. An attestation clause is

> [a] provision at the end of an instrument ( [especially] a will) that is signed by the instruments [sic] witnesses and that recites the formalities required by the jurisdiction in which the instrument might take effect (such as where the will might be probated). The attestation strengthens the presumption that all the statutory requirements for executing the will have been satisfied.

*In re Estate of Guy*, No. M2001-02644-COA-R3-CV, 2002 WL 31890908, at \*1 (Tenn. Ct. App. Dec. 31, 2002) (quoting *Black's Law Dictionary* 124 (7th ed. 1999)). It is well-settled that

> Proof of genuine signatures of the testator and attesting witnesses, along with an attestation clause reciting that the will was properly executed, creates a rebuttable presumption of due execution. *In re Estate of Bradley*, 817 S.W.2d 320, 323 (Tenn.App.1991). Proponents of a will are not obliged to prove each fact essential to a will by direct evidence; in the absence of any satisfactory evidence to the contrary, the presumption is that the formalities required have been met. *Cooper v. Austin*, 837 S.W.2d 606, 612 (Tenn. App. 1992), citing *Leathers v. Binkley*, 196 Tenn. 80, 264 S.W.2d 561, 563 (1954).

*In re Estate of Ross*, 969 S.W.2d 398, 400 (Tenn. Ct. App. 1997).

*In re Estate of Ross* is an excellent example of this presumption. In that case, the will included an attestation clause stating that the will was executed in accordance with section 32-1-104(a) requirements. During a deposition taken in the later estate matter, one of the witnesses testified that, contrary to the attestation clause she was not informed that the document was the testator's will. *Id.* At the later trial, however, the witness testified that she was in fact aware that she was signing a will. *Id.* The trial court denied probate of the will on this basis. *Id.*

We reversed the decision of the trial court. First, we applied the cancellation rule to conclude that the witness's two conflicting statements should cancel out. *Id.* Under these circumstances, we held that where "there is no positive testimony contradicting the

attestation clause, the presumption of proper execution remains and her testimony does not invalidate the execution of the will." *Id.* As such, the Court of Appeals concluded that the will was not invalidated on this basis. *Id.*

The same is true in this case. Here, while not sufficient to meet the requirements of a self-proving affidavit under section 32-2-110, the will does contain "[a] provision at the end of an instrument ([especially] a will) that is signed by the instrument[']s witnesses and that recites the formalities required by the jurisdiction in which the instrument might take effect[.]" *In re Estate of Guy*, 2002 WL 31890908, at *1 (quoting ***Black's Law Dictionary***, at 124).[6] Specifically, this clause indicates that Testator informed both Ms. Thornton and Ms. Peete that the document was his will and that all parties signed in the presence of each other. Moreover, Ms. Lanier testified without dispute that the signatures of Testator and both witnesses were genuine. Taken together, this proof therefore created "a rebuttable presumption of due execution." ***In re Estate of Ross***, 969 S.W.2d at 400 (citing ***In re Estate of Bradley***, 817 S.W.2d at 323). Appellant was therefore not required "to prove each fact essential to a will by direct evidence[.]" *Id.* (citing ***Cooper***, 837 S.W.2d at 612). Rather, "the presumption of the validity of the execution of the will [must] be overcome by positive testimony from an attesting witness contrary to the recitals contained in the attestation clause." ***Dobson v. Shortt***, 929 S.W.2d 347, 350 (Tenn. Ct. App. 1996).

The evidence presented, however, is not contrary to the attestation clause. Here, Ms. Thornton testified that she could not "unequivocally" recall whether Ms. Peete was present when Testator signed the will or if Testator informed Ms. Peete that the document was his will. Ms. Thornton's lack of memory as to these facts, however, does not constitute "positive testimony" that the recitals in the attestation clause were inaccurate. *Id.* Simply put, the record contains no affirmative evidence that Testator did not inform Ms. Peete that the document to be signed was his will or that both Testator and the witnesses signed in each other's presence. As such, the presumption of due execution created by the attestation clause has not been rebutted in this case. The trial court therefore erred in denying admission of the will to probate. Given our resolution of this issue, all other issues raised by Appellant but not specifically addressed in this appeal are pretermitted.

---

[6] Importantly, unlike the self-proving affidavit statute, neither the definition of an attestation clause adopted by this Court, nor section 32-1-104(a) contain any requirement that the will or attestation clause itself be notarized. Indeed, the Tennessee Supreme Court has previously held that a will containing an attestation clause was sufficient to generate the presumption without any consideration of whether the attestation clause itself was notarized. *See* ***Whitlow v. Weaver***, 63 Tenn. App. 651, 664, 478 S.W.2d 57, 62 (Tenn. 1970) (applying the rebuttable presumption based on an attestation clause with no discussion of whether the clause was notarized); *see also* ***In re Estate of Bradley***, 817 S.W.2d 320, 321 (Tenn. Ct. App. 1991) (holding that the evidence did not contradict an un-notarized attestation clause).

## Conclusion

The judgment of the Probate Court of Shelby County is reversed. This matter is remanded to the trial court for all further proceedings as are necessary and consistent with this Opinion. Costs of this appeal are taxed to Appellant Heather Patrice Hogrobrooks Harris, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE