CAMPBELL *v.* HENLEY.

(*Knoxville,* September Term, 1937.)

Opinion filed Nov. 27, 1937.

R. H. WARD, of Kingston, and HOMER H. WALLACE, of Clinton, for Sarah Frances Hudson and Millard L. Hudson.

Ben F. Alexander and A. L. Fox, both of Clinton, for Naomi Frances Henley.

Mr. Chief Justice McKinney delivered the opinion of the Court.

Alexander S. Henley died at his home in Anderson County, on October 25, 1935, survived by his wife, Naomi Frances Henley, and two grandchildren, Sarah Frances Hudson and Millard Hudson, minor children of a deceased daughter by a former marriage. Deceased and his surviving wife had no children. The contest is between said two minor children and the wife, Naomi Frances Henley, as to whether a certain instrument written by deceased with a lead pencil, and found after his death in his trunk where he kept his valuable papers, is a completed holographic will, entitled to probate as such. The jury found that it was. Their verdict was approved by the trial court, and upon appeal the judgment of the circuit court was affirmed by the Court of Appeals. We granted *certiorari,* and argument has been waived.

Deceased, a retired mail carrier, was about seventy-one years of age at the time of his death, and for two years prior thereto had engaged in no active occupation. Said paper writing is as follows:

"I Alexander S Henley a citizen of Anderson County Tennessee Being of sound mind and memory (blessed be Almighty God) But considering the uncertainty of this mortal life do make publish and declare this my last will and testament, hereby revoking and annulling all former wills made by me.

"First I desire all my just debts and funeral expenses be freely paid and satisfied.

"Second. The farm and home where we now reside known as Spotswood and bounded by the following described lands N by Jones and McFerrin farms on the E by Duncans S by Lad Bros W by Wilsons containing fifty five more or less acres I will and bequeath to my beloved wife Naomi Frances Henley in fee Simple for ever Third I give and bequeath unto my said wife all the property real personal and mixed which I possess at the time of my death. Fourth I appoint my said wife Naomi Frances Henley as executor and administratrix of my will and estate

"In witness whereof I have here unto set my hand and seal This the 2 day of Feb. (1926) nineteen hundred and twenty six at Oliver Springs Anderson County Tenn.

"Signed published and declared by said testator as his last will and testament in the presence of us who at his request and in his presence and in the presence of each other have hereunto Subscribed our naimes as Witnesses

"Signed

"Seal"

The foregoing paper was neither signed by testator nor subscribed by attesting witnesses.

■ The authority to devise real property by a holographic testament is purely statutory, is an exception to the general rule prescribing the manner by which real property may be devised, and to be effective must comply with the statute. *Howell* v. *Moore,* 14 Tenn. App., 594. Our statute upon the subject taken from the North Carolina Act of 1784, as set forth in section 8090 of the Code of 1932, is as follows:

"But a paper writing, appearing to be the will of a

deceased person, written by him, having his name subscribed to it, or inserted in some part of it, and found, after his death, among his valuable papers, or lodged in the hands of another for safekeeping, shall be good and sufficient to give and convey lands, if the handwriting is generally known by his acquaintances, and it is proved by at least three credible witnesses that they verily believe the writing, and every part of it, to be in his hand.''

If the instrument propounded as a holographic will is unfinished and incomplete, or not subscribed by the testator, though his name is inserted in some part of it, or with an attestation clause and no attesting witnesses, the presumption is that the writer did not intend the paper in that imperfect state to be his will; but the presumption may be rebutted by satisfactory proof that it was intended, in the form in which it appears and as far as it goes, to be the last will and testament of the deceased. *Crutcher* v. *Crutcher,* 30 Tenn. (11 Humph.), 377; *Marr* v. *Marr,* 39 Tenn. (2 Head), 303; *R. B. Douglass & Co.* v. *Harkrender,* 62 Tenn. (3 Baxt.), 114; *Davis* v. *Davis,* 74 Tenn. (6 Lea), 543; *Saunders* v. *Hackney,* 78 Tenn. (10 Lea), 194; *Dietz* v. *Gallaher,* 169 Tenn., 435, 88 S. W. (2d), 993, 997.

The mere fact that the script was found among the valuable papers of deceased would not overcome this presumption. Necessarily the instrument had to be lodged with testator's valuable papers. That is an essential requisite under the statute which, if not established, terminates the controversy. An additional element is that the instrument be complete. In the absence of either, or other specified requisites, the paper cannot be given testamentary effect. In *Crutcher* v.

*Crutcher, supra,* the involved paper was in the handwriting of deceased, his name was inserted therein, and it was found among his valuable papers. The court rejected it because incomplete and not intended as a will.

██ ██ We think there can be little doubt but that testator had the form of a will before him when he drafted the paper here involved, and entertained the belief that he had to affix his name thereto and have his signature witnessed by two persons. He may have learned later that this was unnecessary, and thereafter intended that it should operate as his will in its unfinished condition. But there is no evidence to this effect by which the presumption of incompleteness is overcome. Mrs. Parton, who had made her home with deceased and his wife for seven years prior to the former's death, testified that some months before his decease, in speaking of another's will, Mr. Henley said: "Well I have got my will made." This was excepted to, and the exception sustained as to its admission as substantive evidence, but was admitted "for the purpose only of bearing on the question of whether he comprehended and approved this paper as written as his will." This testimony was incompetent for any purpose. It was expressly held that such testimony, as substantive evidence, should be excluded in *Ricketts* v. *Ricketts,* 151 Tenn., 525, 267 S. W., 597, 598; *Hobson* v. *Moorman,* 115 Tenn., 73, 90 S. W., 152, 3 L. R. A. (N. S.), 749, 5 Ann. Cas., 601; and *Marr* v. *Marr, supra.* In the first-named case it was said:

"That declarations, both antecedent and subsequent, may be considered by the jury in determining whether testator fully comprehended and approved the will as written.

"This last rule has reference to cases where the pre-

sumption of testator's knowledge of the contents of the will is overcome by the fact that he was illiterate, signed by mark, and when the draftsman was the principal beneficiary, or cases of like nature.

"We are unable to see how these cases have any bearing upon the question under consideration since none of them deal with the question of forgery. If there is any analogy it is to be found in the conclusion that such declarations are not competent as substantive evidence, but only in relation to the mental status of the testator."

In that case no question was involved as to the execution of the will; the controversy being limited as to the mental capacity of testator to dispose of his property, and it was only with respect to the mental status of complainant that the rule with respect to his declarations was applied. It could have no application in the instant case. No question was involved as to Mr. Henley's capacity to make a will; he had no paper writing before him at the time the alleged statement was uttered; and made no specific reference to the paper here involved. He may have had a valid will at that time and subsequently destroyed it, or the will referred to may never have been discovered. This character of evidence is hearsay and speculative, possesses little probative value, and is incompetent under the authorities cited. There would be much turmoil, confusion, and uncertainty if relatives and interested parties were permitted to testify as to statements made by a decedent with respect to the disposition of his estate. In such a case one group might testify that testator on his deathbed stated that he had a will; while another group would give contrary testimony, resulting most likely in the court making a disposition of testator's property

which he never intended. The following statement made by the court in *Marr* v. *Marr, supra,* is applicable and worthy of repetition:

"CHIEF JUSTICE BEST, in 15 Con. Law Rep. 491, in reference to a witnessed will, said: 'It has been insisted that declarations of the testator were admissible in evidence, to show that the will he had executed was not valid; but no case had been cited to support such a position, and we shall not, for the first time, establish a doctrine which would render useless the precautions of making a will; for if such evidence were admissible, some witness would constantly be brought forward to set aside the most solemn instruments. Such a doctrine would be not only in the highest degree inconvenient, but contrary to the first principles of evidence, according to which the will itself is the best evidence which the nature of the case supplies.'"

Our statutes of descent and distribution are considered just and equitable as to the method by which estates are devised, and should be applied unless it clearly appears that the deceased intends his estate to be disposed of otherwise.

In *Dietz* v. *Gallaher, supra,* it was stated: "It may be noted that in each instance in which this court has held an unsigned or incompleted instrument entitled to probate as a will, the testator was prevented by an act of God from signing or completing the instrument. In *Orgain* v. *Irvine, supra,* [100 Tenn., 193, 43 S. W., 768], the testator became mentally incapacitated within 24 hours after the paper was written, and died shortly afterward. In *McLean* v. *McLean, supra* [6 Humph. (25 Tenn.), 452], the testatrix died the next day after the paper writing was prepared. In *Guthrie* v. *Owen, su-*

*pra,* [2 Humph. (21 Tenn.), 202, 36 Am. Dec., 311], the testator became too tired to go on with the preparation of the paper writing, and died on the next day. We do not say that an act of God must necessarily intervene in order to dispense with signature or completion of a paper writing offered as a will. However, where a testatrix is fully advised as to the formalities incident to the execution of a valid will, where she lays aside and treats as of little value a paper writing prepared one year before her death, never signs that paper, but in the meanwhile preserves and deposits for safekeeping another paper writing duly executed as her will, we are satisfied such testatrix could not have regarded the unsigned paper as operative."

■ ■ It is said that in neither of the cases referred to in support of the above statement was the court considering a holographic will. While that is true, upon the question of incompleteness we are unable to draw a distinction between a holographic will and one under the general statute. An incompleted will is just as ineffectual under one statute as under the other. A holographic will, when the requirements of the statute are complied with, is of the same dignity as a will attested by subscribing witnesses. *Marr* v. *Marr, supra; Reagan* v. *Stanley,* 79 Tenn. (11 Lea), 316; *Howell* v. *Moore, supra.*

We conclude, therefore, that the trial court was in error in not sustaining the motion of contestants for a directed verdict. The judgments of the circuit court and the Court of Appeals are accordingly reversed, and the case remanded to the circuit court of Anderson County for further proceedings in accordance with this opinion.