BALL et al. v. MILLER et al.—214 S. W. (2d) 446.

Eastern Section.   July 14, 1948.

Petition for Certiorari denied by Supreme Court, October 16, 1948.

Chase & Neel and Price & Price, all of Johnson City, and Frank B. Coleman, of St. Louis, Mo., for plaintiff in error.

Simmonds & Bowman and Charles T. Herndon, III, all of Johnson City, for defendants in error.

GOODMAN, J.   This is a paper writing, as hereinafter set forth, proffered as the last will and testament of Mrs. Callie Dyer, deceased:

"I want Kate & Frank to have one half of all I have and Lotchie Ball to divide the other half to Jacksonville Old Peoples Home and Atlanta Christian Orphanage. My brother Jack Miller is to have $25.00, a month as long as he lives.

"Effie May Dyer is to have $500.00 cash—

"Kate Cooter is to use this money for the education of her children—

"Helen Bolton is to have my china—

"Dr. Hunt is to be paid $100.00 present—

"Orville Miller Co. Adm.

"Lotchie Ball to be administratorix

"Nov. 17, 1946

"(c)   Callie Dyer

"Witness:

L. W. Hunt, M. D."

Mrs. Dyer died on November 22, 1946, and said paper writing was admitted to probate in the County Court at Jonesboro, Tennessee, on the 25th day of November, 1946, as her last will and testament. Thereafter, an original bill was filed in the Chancery Court at Johnson City by Mrs. Lochie Ball, Executor, seeking a construction of said instrument. T. J. Miller, defendant, a brother and one of the heirs and distributees of Callie Dyer, deceased, demurred to said bill on the principal ground, in substance, that said instrument did not conform to the statutes relating to the execution of wills. At about the same time there was pending, in the County Court of Washington County, the petition of said T. J. Miller, filed on his own behalf and on behalf of the other heirs of said decedent, seeking to have said paper writing certified to the Law Court at Johnson City to the end of there trying the issue as to its validity. In the Chancery cause, the court sustained the demurrer of the defendant, and an appeal was perfected by the complainant to the Supreme Court. That Court, in an opinion reported in Ball v. Cooter, 185 Tenn. 631, 207 S. W. (2d) 340, sustained the decree of the Chancellor dismissing the bill, but upon the ground that he was without jurisdiction, the same resting with the Circuit Court on the issue of devisavit vel non. The peti-

tition before the County Court having been answered and hearing thereon in that Court having been waived, the transcript of the proceedings was certified to the law court at Johnson City for trial, where a declaration was filed by the plaintiff Mrs. Lochie Ball, executrix, and by the Jacksonville Old Peoples Home and Atlanta Christian Orphanage, and a demurrer thereto and motion to strike was interposed by the contestant, T. J. Miller, on the grounds, in substance, (1) that the declaration is not necessary or proper upon the issue of devisavit vel non, (2) that the declaration shows upon its face that the alleged will had not been signed and witnessed in accordance with the statutes of the State of Tennessee, and (3) that the declaration was insufficient on its face. The Court having sustaned said demurrer, the plaintiffs excepted and were permitted to amend their declaration so as to present the general issue for trial. For plea, the contestant denied that the paper writing offered for probate was the last will and testament of Callie Dyer, deceased. The issues having been thus joined, the case thereupon came on for trial before the Circuit Judge and a jury, whereupon, at the close of all evidence introduced on behalf of the proponents of the will, the trial judge sustained the motion of the contestants for a directed verdict. A judgment was entered vacating, annulling and setting aside the probate in common form of said instrument as the last will and testament of said decedent. Proponents' motion for a new trial, as amended, having been overruled, they excepted and prayed and perfected appeal to this Court.

The plaintiff in error, Mrs. Lochie Ball, here challenges the action of the trial judge by six assignments. We deem the action of the trial judge in sustaining contestant's demurrer to the declaration, as originally filed by

proponents, to have been correct and, in as much as it is conceded that the proposition relating thereto, as set forth in Assignment IV, involved a situation which was cured by amendment to the original declaration offered and allowed, further consideration of this assignment appears unnecessary. Assignments I, II and III are several and may be considered along with Assignment VI, which pertains to the court's action in directing a verdict. By Assignment V, it is insisted that the court should have left to the determination of the jury the question of the credibility of the witnesses and the question of whether or not one selected by the testator as a subscribing witness to the will was prevented from signing her name thereto by an Act of God. Assignments I, II, and III, filed by the "Old Peoples Home" of Jacksonville, Florida, and "Atlanta Christian Orphanage of Atlanta, Georgia," correspond generally to Assignments I, II, and V, respectively, of Mrs. Lochie Ball, and will be treated concurrently. Counsel for the latter say that they are constrained to believe that the position formerly contended for by them, that the Legislature did not intend to repeal the long-recognized ecclesiastical laws relating to the execution of wills of personalty, was settled contrary to such contention in the case of Fann v. Fann, Tenn. Sup. 208 S. W. (2d) 542. We concur in this view, so that our determination here shall be comprehensive of all types of property subject to the testator's disposition by the instrument in question.

In giving consideration to the validity of the will, subscribed to by only one witness, the matter of whether the signature of a second witness was prevented by an Act of God may be well related to the treatment to be accorded the general proposition.

The statutory provisions relating to the execution of wills, with which we are here particularly concerned are, as embodied in the Code, as follows:

Section 8089: "No last will or testament shall be good or sufficient to convey or give an estate in lands, unless written in the testator's lifetime, and signed by him, or by some other person in his presence and by his direc-ection, and subscribed in his presence by two witnesses at least, neither of whom is interested in the devise of said lands." Acts 1784, April ses., Ch. 22, sec. 11.

Section 8098.4: "The execution of a will, other than a holographic or nuncupative will, must be by the signa-ture of the testator and of at least two witnesses as fol-lows:

"(1) Testator. The testator shall signify to the at-testing witnesses that the instrument is his will and either

"(a) Himself sign,

"(b) Acknowledge his signature already made, or

"(c) At his direction and in his presence have some-one else sign his name for him, and

"(d) In any of the above cases the act must be done in the presence of two or more attesting witnesses.

"(2) Witnesses. The attesting witnesses must sign

"(a) In the presence of the testator, and

"(b) In the presence of each other." Acts 1941, Ch. 125, Sec. 4.

The facts pertaining to the execution of the purported will of Mrs. Dyer may be briefly stated as follows: Mrs. Dyer was taken to the Appalachian Hospital in Johnson City on November 16, 1946. On the following evening, at or about six o'clock P. M., Mrs. Dyer, with Dr. L. W. Hunt, her physician, and an old friend, Mrs. Winton Chambers, in attendance, requested that Mrs. Chambers obtain writing materials and write a will for her, which

the former, then under a partial oxygen tent, proceeded to dictate. Upon completion of the dictation, Mrs. Dyer read the instrument and signed it. She thereupon requested Dr. Hunt and Mrs. Chambers to sign as witnesses. Dr. Hunt proceeded to sign first and, during the course of his subscription, a chocking spell came over Mrs. Dyer interrupting further consideration of the will at the time. Mrs. Chambers attended her and then went out to seek a nurse. In the opinion of the attending physician, Mrs. Chambers and Mrs. Lochie Ball, Mrs. Dyer was of sound mind at the time the instrument was signed by her, but that thereafter she was never of sufficient capacity to transact business. Mrs. Chambers never affixed her signature to the paper. She testified that the matter left her mind after Mrs. Dyer took a turn for the worse and that she did not learn that she had not signed until after the latter's death.

Counsel for the proponents rely upon Guthrie v. Owen, 21 Tenn. 202, 36 Am. Dec. 311; Campbell v. Henley, 172 Tenn. 135, 110 S. W. (2d) 329, 331; and Orgain v. Irvine, 100 Tenn. 193, 43 S. W. 768; with relation to the matter of incomplete wills and wills, the execution of which has been prevented by an Act of God. But these decisions go only so far as to sustain incomplete instruments as wills of personalty. And, indeed, the principle there adhered to became well established in this State. As stated in Sizer's Prichard, Law of Wills and Executors (Second Edition), "It has been seen that while a will of personalty need not be signed by the testator or subscribed by witnesses, the presumption of law is against every paper not actually executed by the testator. But if the paper be complete in all other respects, the presumption is slight and feeble, and one comparatively easy to overcome, as by its being satisfactorily shown that the non-

execution of the paper may be justly ascribed to some other cause than the abandonment of the intention therein expressed. Thus, the presumption may be rebutted by showing that the execution was prevented by the Act of God, or that the deceased regarded it as a will, and meant it to operate in its present state, without doing any further act to give testamentary effect. So, where a memoranum, not signed by the testatrix, but attested by three witnesses, was shown to have been drawn up by one of the subscribing witnesses at the request of the testatrix, 'so that the world might know she wished her property disposed of after her death', it was held to be a valid will of personalty." Sec. 22. In Dietz v. Gallaher, et al., 1935, 169 Tenn. 435, 88 S. W. (2d) 993, our Supreme Court, in an opinion by Mr. Chief Justice GREEN, quoted from Johnson v. Fry, 41 Tenn. 101, as follows:

"Our Statute of Wills (Section 8089 et seq., Code 1932) has given no exact directions, in relation to the attestation of Wills of Personalty, as it has done in cases of realty; but, that it requires two witnesses to establish a Will of personal property, is a settled rule in this State. Moore v. Steele, 10 Humph. 562 [29 Tenn. 562], and cases before and since. They need not be subscribing witnesses, as in case of realty. Nor is it necessary that two witnesses should prove the fact of the execution of the paper. It is enough, that the proof made by two, or more, is equivalent to that." And continuing, said, "Decisions of this court hereafter cited also establish that it is not necessary that a will of personalty be signed by the testator. The latter propostion, however, is subject to this qualification that before an unsigned will of personalty is entitled to probate it must be proved to be according to the instructions of testator and approved by testator. Under such circumstances, an unsigned will

will be held a good testament of personal estate. Sizer's Pritchard's Law of Wills, Sec. 208, paraphrasing 2 Black. Com., 502.'' [169 Tenn. 435, 88 S. W. (2d) 995]

In Fransioli et al v. Podesta, 1939, 175 Tenn. 340, 134 S. W. (2d) 162, 165, the court held a will not valid to pass realty was, nevertheless, sufficient as to personalty saying, ''However, though not good as a holographic will . . ., it is sufficient to pass personalty. State v. Goodman, 133 Tenn. 375, 181 S. W. 312; Reagan v. Stanley, 11 Lea 316, 79 Tenn. 316. The Act of 1784 (Code, section 8089 et seq.) prescribes no form of solemnity for the execution of a will of personalty different from the requirements of the common law, except as to nuncupative wills. Allen v. Huff, 1 Yerg. 404, 407 [9 Tenn. 404, 407]; Franklin v. Franklin, 90 Tenn. 44, 16 S. W. 557; Organ v. Irvine, 100 Tenn. 193, 43 S. W. 768. According to the ecclesiastical laws there is nothing that requires so little form and solemnity as the making of a will of personalty. Crutcher v. Crutcher, 11 Humph. 377 [30 Tenn. 377]; McCutchen v. Ochmig, 1 Baxt. 390, 394 [60 Tenn. 390, 394].''

But the foregoing text and opinions were written prior to the passage of the Uniform Wills Act (1941), Code Sec. 8098.4, supra. Section 4 of that Act makes no distinction in the requirements as to execution, between a will of realty and a will of personalty, and excepts from its provisions only holographic and nuncupative wills. This was recognized in Fann v. Fann, supra [208 S. W. (2d) 542], wherein the Court, in opinion by Mr. Justice TOMLINSON, said, ''Our 1941 statute carried in Williams' Code as Section 8098.4 provides that the attesting witnesses 'must sign in the presence of each other'. This applies to personalty as well as to realty.''

Although it is always the aim of the law, as oft expressed by the courts, to give effect to the wishes and

purposes of a testator, where legally declared and proven, we are, nevertheless, mindful of the caution which should be exercised in the ascertainment that the instrument proffered truly evinces the testamentary intent. The legislature, in recognition of the inviolability which should be accorded one's final testament and the sanctity of one's right of disposition by will, has circumscribed the execution of wills with the requirements which we now have, and which are designed to prevent fraud and mistake. While in some cases a relaxation in the enforcement of these statutory provisions, or a liberal construction thereof, might appear to be justified, in many instances such a practice would serve only to thwart the testator's purposes. A single divergence would most certainly set an unwholesome precedent, and weaken, if not utterly destroy, the legislative safeguards. In American Jurisprudence, it is said: "The right to dispose of property by will is a creature of statute and is subject to legislative control. Statutes in effect in the various jurisdictions prescribe the observance of certain formalities in the execution of wills which are intended to prevent fraud and uncertainty in the testamentary dispositions of property by rendering it certain that the testator is cognizant of the nature of the instrument which he signs. These statutory requirements must be complied with, at least substantially, in order to impart validity to an instrument as a will and entitle it to probate; no essential formality may be dispensed with. Any instrument which, although intended as a last will and testament, fails to conform at least substantially to the provisions of the controlling statute governing the execution of wills must be denied probate, notwithstanding that this may and probably will defeat the actual intention of a person as to the disposition of his property. . . ."

Wills Vol. 57, Sec. 217. And it is further stated: "While the courts have no power to substitute their judgment for that of the legislature as to the essentials of a will, and cannot dispense with or lower the statutory requirements for the execution of a will or superadd other conditions, even though a situation apparently meritorious is presented, it is the policy of the courts to sustain a will as legally executed, if it is possible to do so consistently with the requirements of the statutes. Generally speaking, a substantial compliance with the statutory formalities in the execution of a will is sufficient, at least in the absence of a suggestion of fraud, deception, undue influence, or mental incapacity. But such rule cannot be extended so as to dispense with an essential requirement of the statute made for the purpose of preventing fraud either upon the testator or those upon whom the law casts his property after his death. Moreover, a strict compliance with the statute is sometimes said to be essential." 57 Am. Jur., supra, Sec. 218.

The disposition of our courts toward the mandates of the statute is well patterned in Fann, v. Fann, supra. There the infirmity raised was that of the witnesses not signing in the presence of each other. Here, one witness failed to sign. Both represent non-compliance with a requirement essential to the validity of a will.

■■ We have considered the opinions of the court in Wade et al. v. Wade et al., 119 W. Va. 596, 195 S. E. 339, 115 A. L. R. 686 and Sturdivant v. Birchett, 10 Grat., Va., 67, cited on behalf of the proponents. Those cases reflect a disposition of the respective jurisdictions to greater liberality than has been permitted by our courts. While we recognize as salutary the principle that substantial compliance with the pertinent statutes should receive approbation, we differ in the determination as

to what shall constitute adequate compliance. Certain acts required in the execution of wills we view as mandatory and an instrument does not attain the character admissible to probate unless and until they are performed.

The insistence that the issue as to whether or not one of the witnesses to the will was prevented from signing her name to the same by an Act of God should have been submitted to the jury is considered to be without merit. Such an issue, even if decided favorable to the proponents would be non-determinative of the case before us. For if we concede that her subscription was thus prevented, the fact remains that all of the statutory requirements essential to the validity of a will were not complied with, and a strict application of the statute, as indicated, now accorded with respect to wills of personalty as well as will of realty will not permit the exception.

For the reasons aforestated all of the Assignments of Error are overruled and the judgment of the lower court affirmed. The cause is remanded to the Law Court at Johnson City for remand to the County Court of Washington County. The plaintiffs in error and the sureties on their appeal bonds will pay the costs of the appeal.

McAmis and Howard, JJ., concur.