IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
NOVEMBER 17, 2004 Session

IN THE MATTER OF:
THE ESTATE OF FRANCES E. MILAM, DECEASED

Direct Appeal from the Probate Court for Shelby County
No. C-7556      Donn Southern, Judge

No. W2003-03061-COA-R3-CV - Filed April 7, 2005

This appeal involves the construction of a holographic will. Following the decedent's death, two documents in her own handwriting were found among her papers which the probate court admitted as her holographic will. The will contained devises of real and personal property to named individuals and charities. At her death, however, the decedent owned property in excess of the devises made in her will. The executor filed three separate petitions to construe the decedent's will. The children of the decedent's sister argued that the decedent died intestate as to the excess personal property and her personal residence, which the decedent did not specifically devise in her will. The probate court held that the decedent's will contained a residuary clause, therefore, all of the decedent's remaining assets passed through the residuary clause to the individuals and charities named in her will on a *pro rata* basis. In addition, the probate court held that the decedent died intestate as to her residence, which passed to her sister's children by intestate succession. We affirm in part, reverse in part, and remand this case to the probate court for further proceedings consistent with this opinion.

Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Probate Court Affirmed in Part,
Reversed in Part and Remanded

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

Joseph Michael Cook, Memphis, TN, for Appellants

G. Rice Byars, Jr., Roberta Nevil Kustoff, Memphis, TN, for Appellee

# OPINION

## I.
### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On February 17, 2003, Frances Elizabeth Milam ("Decedent") died a resident of Shelby County, Tennessee. Decedent never married and never had any children. She is survived by her niece and nephews: Wendell E. Sweetser, Jr., Kenneth M. Sweetser, Mark L. Sweetser, David M. Sweetser, and Janet Sweetser Rumford (hereinafter referred to as the "Sweetser Children" or "Appellants"). The Sweetser Children are the offspring of Decedent's sister, Doris Milam Sweetser ("Sister"). Decedent's mother, Annie Milam ("Mother"), died on July 4, 1987. Decedent and Sister were the only children of Mother, and Sister predeceased Mother and Decedent.

Found among the Decedent's personal papers at her death were two documents in her own handwriting.[1] The first document, dated July 14, 2002, consists of five handwritten pages and provides, in relevant part, as follows:

> This is my will written in my handwriting. July 14, 2002.
> I appoint Harvey Herring . . . to carry out the provisions of this will as Administrator or Executor. . . .
> I want the five children of my sister, Doris Milam Sweetser, to have my half ownership of the two lots of land which I inherited from Annie B. Milam at her death July 4, 1987. . . . Each child should get one fifth of my one half ownership of the lots. . . . I want to give William C. Olgivie, Rosemont Street, Memphis, the lot I have owned at the end of Rosemont Street, namely lot 53 Rainbow S/D, Rosemont Street, Memphis, TN 38116. . . .
>
> . . . .
>
> I want to give to: . . .   Wendell E. Sweetser $25,000.00
>                            Kenneth M. Sweetser $25,000.00
>                            Mark Sweetser $25,000.00
>                            David Sweetser $30,000.00
>                            Janet Sweetser Rumford $20,000.00
>
> . . . .
>
> Re Will Frances E. Milam
> I do not have sufficient time this date to complete my will with complete information and figures, I will work on it again soon. At

---

[1] The Sweetser Children do not contest that the documents are in the handwriting of the Decedent.

this time I do not have complete figures on assets on hand, investment values etc. I do not know the expenses of settling my estate, taxes involved etc. I will complete the will with as accurate information and figures as possible. I have made an educated start this date.

7-14-2002<br>
/s/ Frances E. Milam

If I do not have sufficient funds to give each person the amounts I listed, the amounts as corrected can be adjusted up or down by considering each part a percentage of the entre total estate available after expenses of settling. FEM

The second document, dated November 9, 2002, consisted of one page providing, in relevant part, as follows:

Notes for my Will as of November 9, 2002 /s/ Frances E. Milam

I do not want any church, and "All Believers" especially, to buy or be given any part of my property — My House, or any part of the land at 839 Eugene, and lot 53 Rosemont, since they disregarded my right to use the driveway to Auburn or Craft Avenue. I do not want any of my assets-money property, personal items etc. to be divided, or given, to any of my relatives that are not named in my will. . . .

The first document also purported to devise to various individuals and charities, including the above cited devises to the Sweetser Children, certain sums of money collectively totaling $264,000.00. At her death, Decedent's estate, excluding her real estate and annuities, was valued at $742,895.94. Decedent also owned several annuities worth $350,793.00 which named the Sweetser Children as joint beneficiaries. In addition, Decedent owned the following parcels of real property: her residence located at 839 Eugene Street, in Memphis, Tennessee, where she resided at her death; a one-half interest in Lots number four (4) and five (5) on The Brick Road[2] in Sanford,

---

[2] At the time of Mother's death in 1987, she owned the following real estate: the house located at 839 Eugene Street in Memphis, Tennessee, and Lots number four (4) and five (5) on The Brick Road in Sanford, Florida. Pursuant to the intestacy laws, Mother's real property passed to Decedent and the Sweetser Children. Decedent obtained a one-half interest in each parcel of property, while the five Sweetser Children collectively received a one-half interest to be divided among them. In March 1998, the Sweetser Children each conveyed their one-half interest in the property located at 839 Eugene Street in Memphis to Decedent via quit claim deeds. Decedent and the Sweetser Children continued to hold their respective interests in the property located in Florida.

Florida; and Lot 53 on Rosemont Street[3] in Memphis, Tennessee, in the Rainbow Subdivision. The total value of Decedent's estate, as evidenced by the federal estate tax return, equaled $1,195,404.04.

On March 7, 2003, Mr. Harvey Herring ("Executor") filed a petition in the Probate Court of Shelby County seeking to have the two holographic documents admitted into probate as the Last Will and Testament of the Decedent. Executor submitted the July 14, 2002, document as Decedent's holographic will and the November 9, 2004, document as a codicil to Decedent's holographic will. On March 7, 2003, the probate court entered an order admitting the holographic will and codicil into probate as the Last Will and Testament of the Decedent.

Due to the discrepancy between the amounts listed in the devises in the will and the value of the Decedent's estate at her death, the Executor filed a petition to construe the Decedent's will in the probate court. Specifically, Executor sought a construction of the following clause in the July 14, 2002, document:

> If I do not have sufficient funds to give each person the amounts I listed, the amounts as corrected can be adjusted up or down by considering each part a percentage of the entire total estate available after expenses of settling.

The Executor asked the court to determine whether this clause constituted a residuary clause, and whether the word "person" referred to only the named individuals in the Decedent's will or to all named individuals and charitable entities. The Sweetser Children took the position that this clause did not constitute a residuary clause, therefore, the excess personal property not devised in the Decedent's will passed to them through intestate succession. On July 30, 2003, the probate court entered an order finding that the clause at issue constituted a residuary clause, thereby disposing of all of the Decedent's remaining assets on a *pro rata* basis, and the reference to "person" in the residuary clause included both the individuals and charities named.

On August 11, 2003, the Executor filed a second petition to construe the Decedent's will in the probate court. In the second petition, the Executor asked the probate court to look again at the same provision in the Decedent's will, construe the meaning of the term "amounts I listed," and determine those assets that fall within the meaning of the words "entire total estate." Specifically, the Executor asked the probate court to determine whether the Decedent's real estate and annuities should be included when calculating any adjustments to the specific bequests in the Decedent's will. The Executor took the position that such amounts should not be included in the probate estate and used in the calculation of the *pro rata* share of the residual beneficiaries. On November 13, 2003, the probate court entered an order containing the following findings:

---

[3] Decedent acquired the Rosemont Street property by Warranty Deed dated January 29, 1968, from the previous owners.

[D]ecedent intended to dispose of the residuary assets in her Probate estate by determining the proportionate share that each beneficiary of a bequest received in proportion to the total bequests of $264,000.00 and then applying this percentage to determine the additional proceeds and/or property for each such beneficiary to receive from the residuary Probate estate. In determining the proportionate share for each such beneficiary to receive from the residuary Probate estate the decedent did not intend to include in these calculations the annuities passing outside of the Probate estate for which there were beneficiary clauses nor did she intend to include the values for the real property devised in her Last Will and Testament herein admitted to Probate.

The Sweetser Children subsequently filed an appeal to this Court. On March 30, 2004, the Executor filed a third petition, once again asking the probate court to construe the Decedent's will and codicil. This time, the Executor asked the probate court to construe the following provision of the Decedent's will:

I want the five children of my sister, Doris Milam Sweetser, to have my half ownership of the two lots of land which I inherited from Annie B. Milam at her death July 4, 1987. . . . Each child should get one fifth of my one half ownership of the lots. . . .

The Executor contended that the Decedent's statement "my half ownership of the two lots of land" referred only to Lots four (4) and five (5) on The Brick Road in Sanford, Florida, because these were the only lots the Decedent had a one-half interest in at her death. In addition, the Executor pointed to the following clause in the holographic codicil, which provided:

I do not want any church, and "All Believers" especially, to buy or be given any part of my property – My House, or any part of the land at 839 Eugene, and Lot 53 Rosemont, since they disregarded my right to use the driveway to Auburn or Craft Avenue.

The Executor argued that this language presupposes the Decedent intended the property located at 839 Eugene Street in Memphis to pass through the residuary clause and not to the Sweetser Children through the devise in the will.

While the third petition was pending before the probate court, the parties filed a joint motion with this Court on April 15, 2004, seeking to temporarily suspend the appellate proceedings. By order entered on April 22, 2004, this Court granted the motion filed by the parties. On May 7, 2004, the probate court entered its order on the Executor's third petition, finding that the Decedent's

property located at 839 Eugene Street in Memphis passed to the Sweetser Children by intestate succession. The Executor subsequently filed an appeal to this Court.[4]

On appeal, the Appellants have presented the following issues for our review:

I.      Whether the probate court erred in finding that the holographic documents submitted to the probate court by the Appellee constituted the Last Will and Testament of the Decedent;

II.     Whether the probate court erred in determining that the holographic documents admitted into probate as the Last Will and Testament of Decedent contained a residuary clause; and

III.    Alternatively, if this Court determines that the Decedent's Last Will and Testament does contain a residuary clause, whether the probate court erred in ruling that Decedent's "entire total estate" does not include the annuities and real property for purposes of calculating the *pro rata* share of the remaining assets to be paid to any of the beneficiaries under the residuary clause.

In addition, the Appellee presents the following issue for our review:

I.      Whether the probate court erred in determining that the Decedent's personal residence located at 839 Eugene Street in Memphis, Tennessee, should pass to the Appellants by intestate succession.

For the reasons set forth more fully herein, we affirm in part, reverse in part, and remand this case to the probate court for further proceedings consistent with this opinion.

## II.
### LAW AND ANALYSIS

#### A.
#### *Whether the Decedent Created a Holographic Will*

Although not specifically identified as an issue, the Sweetser Children argued, in their brief and at oral argument, that the documents admitted into probate do not constitute a valid holographic will. In support of this position, they point to the language in the documents themselves, where the Decedent stated:

> I do not have sufficient time this date *to complete my will* with complete information and figures, I will work on it again soon. . . . *I*

---

[4] On November 15, 2004, the Sweetser Children filed a motion with this Court seeking to have the Executor's cross-appeal dismissed for failure to file a transcript of the proceedings before the probate court on May 4, 2004, in violation of the Tennessee Rules of Appellate Procedure. By subsequent order, this Court denied the motion filed by the Sweetser Children and permitted the Executor to supplement the record with a transcript of the hearing.

> *will complete the will* with as accurate information and figures as possible. I have made an *educated start* this date.

(emphasis added). The Sweetser Children argue this language indicates that the Decedent did not intend for these documents to operate as her Last Will and Testament.

The requirements for a valid holographic will in this state are as follows: "No witness to a holographic will is necessary, but the signature and all its material provisions must be in the handwriting of the testator and the testator's handwriting must be proved by two (2) witnesses."[5] Tenn. Code Ann. § 32-1-105 (2003); *see also Smith v. Smith*, 232 S.W.2d 338, 341 (Tenn. Ct. App. 1949). In addition, "a testamentary intent must accompany the performance of the statutory requirements and this must be proven in a manner which conforms to applicable rules of evidence and procedure." *Smith*, 232 S.W.2d at 341. "A holographic will, when the requirements of the statute are complied with, is of the same dignity as a will attested by subscribing witnesses." *Campbell v. Henley*, 110 S.W.2d 329, 332 (Tenn. 1937).

Even though the purported will meets the statutory requirements, it is still open to attack on numerous grounds, including "that it was never legally assented to by the deceased as a complete and finished act to any extent." *Marr v. Marr*, 39 Tenn. (2 Head) 303, 306–07 (Tenn. 1859); *see also R.B. Douglass & Co. v. Harkrender*, 62 Tenn. (3 Baxt.) 114, 119–20 (Tenn. 1873); *Crutcher v. Crutcher*, 30 Tenn. (11 Hum.) 377, 386–87 (Tenn. 1850). A party wishing to test the validity of a will may file a will contest action. *See* Tenn. Code Ann. §§ 32-4-101, -104 (2003). A will contest action is an *in rem* proceeding instituted for the purpose of testing the validity of the will. *In re Estate of Eden*, 99 S.W.3d 82, 87–88 (Tenn. Ct. App. 1995); *Clark v. Hefley*, 238 S.W.2d 513, 516 (Tenn. Ct. App. 1950). "It is well settled that such persons only as would be entitled to share in the real or personal estate of the deceased if there were no will, or if the will were set aside, are entitled to impeach its validity." *Gore v. Howard*, 30 S.W. 730, 731 (Tenn. 1894); *see also Warmath v. Smith*, 279 S.W.2d 257, 259 (Tenn. 1955). The parties do not dispute that the Sweetser Children would be entitled to share in the real and personal property in the Decedent's estate under the law of intestate succession. *See* Tenn. Code Ann. § 31-2-104(b)(3) (2003).

Our review of the record, however, reveals that the Sweetser Children never instituted a will contest action in the court below. In fact, at oral argument, counsel for the Sweetser Children conceded this fact by stating that the Sweetser Children did not wish to file a will contest action because they did not want to disturb the devises made to certain charities in the Decedent's will. It is well settled that questions not raised in the trial court will not be entertained for the first time on appeal. *Lawrence v. J.L. Stanford & Ashland Terrace Animal Hosp., P.C.*, 655 S.W.2d 927, 929 (Tenn. 1983). Parties are not permitted to raise in the appellate courts of this state new theories never presented for resolution in the court below. *City of Cookeville v. Humphrey*, 126 S.W.3d 897,

---

[5] The Sweetser Children do not argue that the documents are not in the handwriting of the Decedent. In seeking to have the documents admitted to probate as the Last Will and Testament of the Decedent, the Executor offered the affidavits of two witnesses in order to prove that the documents were in the handwriting of the Decedent.

905–06 (Tenn. 2004); *Taylor v. Beard*, 104 S.W.3d 507, 511 (Tenn. 2003); *Chadwell v. Knox County*, 980 S.W.2d 378, 384 (Tenn. Ct. App. 1998). Accordingly, the Sweetser Children have waived this issue on appeal. *In re Valentine*, 79 S.W.3d 539, 544 n.3 (Tenn. 2002). Thus, for purposes of this appeal, we must treat the documents presented to the probate court as the valid holographic will of the Decedent.

## B.
### *Residuary Clause*

The Sweetser Children contend that, if the documents do constitute the Last Will and Testament of the Decedent, the Decedent died partially intestate because the Decedent's will cannot be construed as containing a residuary clause. The Decedent's will provided, in relevant part, as follows:

> If I do not have sufficient funds to give each person the amounts I listed, the amounts as corrected can be adjusted up or down by considering each part a percentage of the entire total estate available after expenses of settling.

The probate court held that "this language serves as a residuary clause to the Decedent's Will and disposes of *all of the Decedent's remaining assets* on a pro rata basis as provided in the aforementioned clause and, therefore, the *Decedent did not die partially intestate*." (emphasis added). In addition, the probate court held that "the reference to 'person' in the residuary clause in the Decedent's Will does include charitable entities, and, therefore, the twenty-two (22) named individuals and charities in the Will all constitute the Residual Beneficiaries of the Decedent's Will." Thus, under the probate court's construction, the named beneficiaries in the Decedent's will stand to receive a *pro rata* share of the remaining assets in the Decedent's estate after the payment of expenses.

The Sweetser Children argue that the probate court ignored the language "[i]f I do not have sufficient funds to give each person the amounts I listed," which they contend constitutes a condition precedent which the Decedent placed on the operation of the above cited clause. According to this line of reasoning, since the Decedent died with funds in excess of the general devises in her will, this clause has no application to the disposition of the remainder of her property. In addition, the Sweetser Children argue that the use of the word "up" creates a patent ambiguity because the money the Decedent directed to be paid to named beneficiaries could not be adjusted up if there were insufficient funds to pay those bequests. The Sweetser Children also direct our attention to the probate court's order regarding the third petition filed by the Executor, where the court held that "the Decedent's property located at 839 Eugene, Memphis, Tennessee, passes to [the Sweetser Children]

*under the laws of intestacy and does not pass under the Decedent's will as part of the Decedent's Residuary Estate.*" (emphasis added).

"The purpose of a suit to construe a will is to ascertain and give effect to the testator's intention." *In re Estate of Eden*, 99 S.W.3d 82, 87 (Tenn. Ct. App. 1995) (citations omitted). "The construction of a will is a question of law for the court." *Briggs v. Briggs*, 950 S.W.2d 710, 712 (Tenn. Ct. App. 1997) (citing *Presley v. Hanks*, 782 S.W.2d 482, 487 (Tenn. Ct. App. 1989)). Accordingly, we review the probate court's conclusions of law *de novo* without affording any presumption of correctness to those conclusions. *In re Estate of Vincent*, 98 S.W.3d 146, 148 (Tenn. 2003) (citing *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993)).

"It is the absolute right of the testator to direct the disposition of his property and the Court's [sic] are limited to the ascertainment and enforcement of his directions." *Daugherty v. Daugherty*, 784 S.W.2d 650, 653 (Tenn. 1990) (citing *Nat'l Bank of Commerce v. Greenberg*, 258 S.W.2d 765 (Tenn. 1953); *Third Nat'l Bank in Nashville v. Stevens*, 755 S.W.2d 459, 462 (Tenn. Ct. App. 1988)). "The cardinal rule in construction of all wills is that the court shall seek to discover the intention of the testator and give effect to it unless it contravenes some rule of law or public policy." *Fisher v. Malmo*, 650 S.W.2d 43, 46 (Tenn. Ct. App. 1983); *see also Briggs v. Briggs*, 950 S.W.2d 710, 712 (Tenn. Ct. App. 1997); *Presley v. Hanks*, 782 S.W.2d 482, 487 (Tenn. Ct. App. 1989). In seeking out the testator's intent, we have several rules of construction to aid us in that effort. However, all rules of construction are merely aids in ascertaining the intent of the testator. *Sands v. Fly*, 292 S.W.2d 706, 710 (Tenn. 1956).

In gleaning the testator's intent, we look to the entire will, including any codicil. *Stickley v. Carmichael*, 850 S.W.2d 127, 132 (Tenn. 1992); *Presley*, 782 S.W.2d at 488. The testator's intent is to be determined from the particular words used in the will itself, *Stickley*, 850 S.W.2d at 132, and not from what it is supposed the testator intended. *Briggs*, 950 S.W.2d at 712; *Presley*, 782 S.W.2d at 488; *Fisher*, 650 S.W.2d at 46. "Where the will to be construed was drafted by the testator himself who was not versed in the law and without legal assistance the court in arriving at the intention of the testator should construe the language of the will with liberality to effectuate what appears to be the testamentary purpose." *Davis v. Anthony*, 384 S.W.2d 60, 62 (Tenn. Ct. App. 1964) (citations omitted). We are also guided by an additional principle of construction; when a decedent undertakes to make a will, we must presume that the decedent intended to die testate, and we must seek to construe the will, where possible, as including all of the testator's property at death. *Davis*, 384 S.W.2d at 62 (citations omitted). The legislature of this state has provided as follows:

> A will shall be construed, in reference to the real and personal estate comprised in it, to speak and take effect as if it had been executed immediately before the death of the testator, and shall convey all the real estate belonging to the testator, or in which the testator had any interest at the testator's decease, unless a contrary intention appears by its words in context.

Tenn. Code Ann. § 32-3-101 (2003). Since this statute is in derogation of the common law, it must be strictly construed. *Davis v. Price*, 226 S.W.2d 290, 292 (Tenn. 1949); *see also McDonald v. Ledford*, 205 S.W. 312, 313 (Tenn. 1917).

Upon reviewing the Decedent's will, we cannot agree with the probate court that the clause at issue constitutes a residuary clause. "Every word used by a testator in a will is presumed to have some meaning." *In re Estate of Jackson*, 793 S.W.2d 259, 261 (Tenn. Ct. App. 1990) (citing *Third Nat'l Bank v. Stevens*, 755 S.W.2d 459 (Tenn. Ct. App. 1988)). The clause at issue, which comes after the Decedent's signature on the last page of the will, expressly provides:

> *If I do not have sufficient funds to give each person the amounts I listed*, the amounts as corrected can be adjusted up or down by considering each part a percentage of the entire total estate available after expenses of settling.

(emphasis added). Even though we are to construe a will liberally when written in the testator's own hand, *Davis*, 384 S.W.2d at 62, we cannot ignore the clear and unambiguous statements of the testator. This phrase, despite her reference to adjustments "up or down" and "entire total estate," is not framed in terms that would indicate the Decedent intended it to operate as a residuary clause and, thereby, dispose of that portion of the Decedent's estate not specifically devised in her will. *See Milligan v. Greeneville College*, 2 S.W.2d 90, 93–94 (Tenn. 1928) ("The testator thus undertook to describe the residue of his estate and indicate what he meant by the residue. . . ."); *In re Estate of McFarland*, No. E2003-01833-COA-R9-CV, 2004 Tenn. App. LEXIS 700, at *12 (Tenn. Ct. App. Oct. 27, 2004) (noting that the language "the rest of the estate" or "the remainder of my estate" signals a residuary clause). "[F]or the testator's will to be given effect, there must be some evidence of that intent: 'We cannot determine the devolution of estates based upon the mere surmise as to the testator's intention.'" *In re Walker*, 849 S.W.2d 766, 768 (Tenn. 1993) (quoting *Pinkerton v. Turman*, 268 S.W.2d 347, 350 (Tenn. 1954)).

Although we address the issue more fully below, we note here that, while the Decedent's will contains specific devises of real property, no mention is made of her residence located at 839 Eugene Street in Memphis, Tennessee. Recognizing this, the probate court, in addressing the Executor's third petition to construe the will and codicil, stated that this home passed to the Sweetser Children by intestate succession. This order is in direct contravention of the probate court's order addressing the Executor's first petition to construe the will, where the court held that the clause at issue "serves as a residuary clause to the Decedent's Will and disposes of *all of the Decedent's remaining assets* on a pro rata basis as provided in the aforementioned clause and, therefore, the *Decedent did not die partially intestate*." (emphasis added).

The will itself contains further evidence that the Decedent did not intend to die testate as to her entire estate, providing:

-10-

I do not have sufficient time this date *to complete* my will with complete information and figures, I will work on it again soon. At this time I do not have complete figures on assets on hand, investment values etc. I do not know the expenses of settling my estate, taxes involved etc. *I will complete* the will with as accurate information and figures as possible. I have made an *educated start* this date.

(emphasis added). As previously stated, we must strictly construe the statutory presumption against intestacy. *Davis v. Price*, 226 S.W.2d 290, 292 (Tenn. 1949). We are cognizant of the fact that the Decedent makes devises of real and personal property to numerous individuals and charities in her will. However, the presumption against intestacy will not pass property not named in a will "[w]here there are no contextual words indicating an intention to include property not specifically mentioned." *Bynum v. McDowell*, 3 Tenn. App. 340, 352 (Tenn. Ct. App. 1926). "The cases make clear that this presumption applies in absence of the appearance of a contrary intent and only when 'the words used, by any fair interpretation, will embrace the property not otherwise devised.'" *In re Estate of Dye*, 565 S.W.2d 219, 221 (Tenn. Ct. App. 1977) (quoting *McDonald v. Ledford*, 205 S.W. 312, 313 (Tenn. 1918)); *see also In re Last Will and Testament of Tipler*, 10 S.W.3d 244, 249 (Tenn. Ct. App. 1998).

The Decedent's will as a whole demonstrates an intent contrary to the presumption against intestacy. To hold that the clause at issue constitutes a residuary clause is not only contrary to the Decedent's express statements in her will, it amounts to the probate court "supposing" what the Decedent intended in her will. This a probate court cannot do. *Presley v. Hanks*, 782 S.W.2d 482, 488 (Tenn. Ct. App. 1989). "Courts may not make a new will or bequest for a testator but must construe what the testator has written and published." *In re Estate of Jackson*, 793 S.W.2d 259, 261 (Tenn. Ct. App. 1990) (citing *Andrews v. Andrews*, 51 Tenn. (5 Heisk.) 4 (Tenn. 1871)). The probate court erred in construing the Decedent's will to contain a residuary clause. Accordingly, we reverse the probate court on this issue and find that the Decedent died intestate as to that portion of her estate which she did not expressly make provisions for in her will.

Finally, in addressing the Executor's second petition to construe the Decedent's will, the probate court held that only those assets in the Decedent's "probate estate" should be considered for purposes of calculating the *pro rata* share of the residual beneficiaries. Since we have held that the Decedent died intestate as to the excess personal property not specifically devised in her will, the Appellant's alternative issue is pretermitted.

## C.
### *Decedent's personal residence*

The third petition to construe the Decedent's will filed by the Executor dealt with the following provision:

> I want the five children of my sister, Doris Milam Sweetser, to have
> my half ownership of the two lots of land which I inherited from
> Annie B. Milam at her death July 4, 1987. . . . Each child should get
> one fifth of my one half ownership of the lots.

The probate court held that the Decedent's property located at 839 Eugene Street in Memphis, Tennessee, passed to the Sweetser Children under the laws of intestate succession and not as part of her residuary estate.[6] Therefore, the probate court held that, through the above cited devise, Decedent only conveyed her one-half interest in the two lots in Florida.

On appeal, the Executor, relying on the validity of the residuary clause, argues that the "two lots" referred to in the Decedent's will are actually the two lots located in Sanford, Florida, because these were the only two lots the Decedent had a one-half interest in at her death. Next, the Executor points to the language in the codicil, which provides:

> I do not want any church, and "All Believers" especially, to buy or be
> given any part of my property — my house, or any part of the land at
> 839 Eugene, and lot 53 Rosemont, since they disregarded my right to
> use the driveway to Auburn or Craft Avenue.

He argues that, by specifically stating that she did not want her residence to go to any church, it must be presupposed that the Decedent wanted her house to pass through the residuary clause. Stated differently, if the Decedent intended for her residence to pass by intestate succession, she would not have specifically mentioned how she did not want it to pass in her will.

Conversely, the Sweetser Children argue that, by making reference to "two lots" in her will, the Decedent is actually treating the two lots in Florida as one piece of property. They contend that the Decedent intended her residence in Memphis to pass to them through the above cited devise for the following reasons: when the Decedent originally received the home from Mother, she obtained a one-half interest in it as well; the two lots in Florida are adjoining parcels of land; and the lots in Florida are treated as one parcel of land on the deed and for tax purposes. Alternatively, the Sweetser Children ask us to affirm the trial court's holding and find that the Decedent's residence passed under the law governing intestate succession.

As previously noted, the Decedent's will does not contain a residuary clause, therefore, the Executor's arguments to the effect that the Decedent's residence passes through such a clause is without merit. Thus, we are left with the question of whether the Decedent intended for her residence to pass to the Sweetser Children through the specific devise cited above. In looking at the will as a whole, *Stickley v. Carmichael*, 850 S.W.2d 127, 132 (Tenn. 1992), it is apparent that the

---

[6] As previously noted, this holding is in direct contravention of the probate court's order regarding the Executor's first petition to construe the Decedent's will, where the probate court held that the Decedent's will contained a residuary clause which "disposes of *all of the Decedent's remaining assets* on a pro rata basis." (emphasis added).

Decedent did not specifically provide for the disposition of her residence in her will. The Decedent did specifically devise Lot 53 on Rosemont Street to a friend, however, we find no specific mention of her residence among the specific devises in her will. In the codicil, the Decedent, in addition to mentioning her residence, also mentions Lot 53 on Rosemont Street when identifying those persons or entities she wished to exclude from possessing her real property. Therefore, the Executor's argument that, by mentioning her residence in the codicil, the Decedent demonstrated her intent that it pass her residence through the residuary clause is unpersuasive.

We also note, as we did previously, that the Decedent provided that her will was a work in progress. When construing a will, a court of this state may take note of extrinsic facts that existed at the time the Decedent made her will or order to place itself in the position of the testator at the time of drafting the will. *See Gannaway v. Tarpley*, 41 Tenn. (1 Coldwell) 571, 574 (Tenn. 1860); *Treanor v. Treanor*, 152 S.W.2d 1038, 1041 (Tenn. Ct. App. 1941). When the Decedent made her will in 2002, the Sweetser Children had already conveyed their one-half interest in the property located at 839 Eugene Street to the Decedent. Thus, the only property in which the Decedent held a one-half interest at the making of her will were the two lots in Florida. Accordingly, we conclude that the Decedent did not provide for the disposition of her residence in her will.

"Where there is no residuary clause, property not specifically bequeathed in the will passes as if the deceased died intestate." *In re Estate of Jackson*, 793 S.W.2d 259, 260 (Tenn. Ct. App. 1990) (citing *Pinkerton v. Turman*, 268 S.W.2d 347 (Tenn. 1954); *Bedford v. Bedford*, 274 S.W.2d 528 (Tenn. 1954)). The legislature has so provided, stating:

> When any person shall die intestate, after the payment of debts and charges against the estate, the deceased's property passes to the deceased's heirs as prescribed in the following sections of this chapter. Any part of the estate of a decedent not effectively disposed of by the deceased's will passes to the deceased's heirs in the same manner.

Tenn. Code Ann. § 31-2-101 (2003). "Read literally, T.C.A. § 31-2-101 requires that in cases of partial intestacy, the intestate property be divided as provided for in T.C.A. § 31-2-104." *Standefer v. Booth*, No. 1, 1991 Tenn. App. LEXIS 763, at *7–8 (Tenn. Ct. App. Sept. 20, 1991). Accordingly, we affirm the probate court's holding that the Decedent died intestate as to her residence, located at 839 Eugene Street in Memphis, Tennessee.

## III.
### CONCLUSION

For the reasons set forth herein, we affirm in part, reverse in part, and remand this case to the probate court for further proceedings consistent with this opinion. Costs of this appeal are taxed to the Appellee/Cross-Appellant, J. Harvey Herring, and his surety, for which execution may issue if necessary.

_____

ALAN E. HIGHERS, JUDGE